mobile, and therefore no right of lien existed, and no lien was created. As stated in Trust v. Pirsson, 1 Hilt. 292, 297:

"If, in any case where the right to a lien would be recognized or implied, the parties make a special agreement for a particular mode of payment, or for payment at a particular time or period, the right of lien, which would otherwise be implied, does not exist. Chase v. Westmore, 5 M. & S. 180; Cowell v. Simpson, 16 Ves. 275; Walker v. Birch, 6 T. R. 258; Chandler v. Belden, 18 Johns. 157 [9 Am. Dec. 193]; Woolen Manufactory v. Huntley, 8 N. H. 441 [31 Am. Dec. 198]; Cumming v. Harris, 3 Verm. 244. If the agreement is antecedent to the possession, no lien is created; if it is made afterwards, it is a waiver of the lien. * * * The distinction, that there can be no lien where the day or time for payment is regulated and fixed by the parties, is as old as the Year Books, and it is manifest that the law could not be otherwise. The right to detain all the property to which the lien attaches, until the charge upon it is paid, is incident to the right of lien."

Or as stated by Rapallo, J., in Wiles Laundering Co. v. Hahlo, 105 N. Y. 234, 240, 11 N. E. 500, 502 (59 Am. Rep. 496):

"All these cases are subject to the condition that there is nothing in the contract for doing the work inconsistent with the right of lien, and that where a particular future time of payment is fixed, which may be subsequent to the time when the owner is entitled to a return of the article upon which the work is done, there can be no lien, and that where the parties contract for a particular time or mode of payment the workman would have no right to set up a right to possession, inconsistent with the terms of his contract, and in such a case there is no lien."

The plaintiff, therefore, was entitled to judgment for possession of his automobile, and, as there was no proof that the insurance money had been collected, or that the plaintiff had neglected or refused to take the necessary steps for its collection, the defendant's counterclaim should have been dismissed as prematurely brought, but without prejudice to his right to bring an action therefor at the proper time, in which action plaintiff would then be able to plead any defense or claim for damages that he might have.

The judgment appealed from is therefore reversed, with $30 costs to the appellant, and judgment for the possession of the automobile awarded to plaintiff, with costs in the court below, and defendant's counterclaim dismissed without prejudice. All concur.

---

## RUPPELL v. NEW YORK CENT. R. CO.

(Supreme Court, Appellate Division, Second Department.   March 17, 1916.)

1. COMMERCE ⊚⟶27—"INTERSTATE COMMERCE"—INJURIES TO SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT.

A switchman employed in the yards of an interstate carrier, who at the time of his death was making up a train belonging to another company and to be run over the other company's track in interstate commerce, was employed by the former company in interstate commerce, within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊚⟶27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Negligence &101—Excessive Damages—Switchman—Comparative Negligence.

A verdict in an action under the federal Employers' Liability Act for $12,000 for the death of a switchman, where the switchman was himself negligent, but the circumstances might fairly lead to diverse conclusions as to the proportionate degree of negligence of the switchman and the yard conductor, will not be set aside.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. &101.]

Appeal from Trial Term, Westchester County.

Action by Anna Ruppell, as administratrix of the estate of Joseph Ruppell, Jr., deceased, against the New York Central Railroad Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

John F. Brennan, of Yonkers, for appellant.
Martin T. Manton, of Brooklyn, for respondent.

PUTNAM, J. The question of the neglect of Keefe, the yardmaster, in permitting two switching trains to be simultaneously backed into the yard upon converging tracks, at night, was fairly left to the jury. They were told that deceased at the front of the shunted car was guilty of contributory negligence, so that the sole remaining issue was whether the greater weight of the evidence established negligence in Keefe's conduct. This was as favorable to defendant as it could ask.

[1] But the cars being made up into a train were not owned by defendant, or to be run over its lines. They were passenger coaches to be run by the New York, New Haven & Hartford Railroad Company over its tracks to Springfield, Mass. It is therefore urged that, although deceased (a brakeman on one of these cars) may have been employed in interstate commerce, he was not so employed by the defendant. Where, however, two railroads use a common switching yard, in which the employés of one carrier form a switching crew which is actually making up cars into a train, all of which is to go beyond state lines, those engaged in such switching are under the protection of the federal act, even if they are not moving the cars of their immediate employer. In such case this use of its switching crews makes the employer engaged in interstate commerce. North Carolina Railroad Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159.

[2] We would not be warranted in setting aside the verdict for $12,000. The circumstances might fairly lead to diverse conclusions as to the proportionate degrees of neglect, as between the omissions by the deceased and the faults by the yard conductor.

The judgment and order are therefore affirmed, with costs. All concur.