(No. 12279.—Reversed and remanded.)

THE CHICAGO AND ALTON RAILROAD COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (THOMAS F. CLARK, Admr., Defendant in Error.)

*Opinion filed June 18, 1919—Rehearing denied October 8, 1919.*

1. WORKMEN'S COMPENSATION—*an employee engaged in inter-State commerce is not subject to State Compensation act.* Where the work at which an employee is engaged at the time of his injury is a part of the inter-State commerce in which a railroad is engaged the employee is not entitled to compensation under the Workmen's Compensation act, but his remedy, if any, is under the Federal Employer's Liability act.

2. SAME—*injury in inter-State commerce is within Federal Employer's Liability act, regardless of who causes it.* If an employee of a railroad is engaged in protecting the instrumentalities of the

inter-State commerce of his master and is killed in the course of this employment his injuries arise out of the employment and the cause is one within the scope of the Federal Employer's Liability ' act, regardless of who inflicts the injury causing the death.

3. SAME—*when injury to flagman at public crossing occurs in inter-State commerce.* Where the railroad tracks at a public crossing are used in both inter-State and intra-State commerce and one of the railroads using the crossing employs a flagman to prevent collisions with vehicles the flagman is engaged in inter-State commerce, and liability for his death when struck by a train while in the performance of his duties is governed by the Federal Employer's Liability act though the train was not a train of his employer but of the other company, which had an arrangement by which it reimbursed the employer for one-third of the flagman's wages.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

PATTON & PATTON, (SILAS H. STRAWN, of counsel,) for plaintiff in error.

GEORGE M. MORGAN, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a writ of error sued out by the Chicago and Alton Railroad Company to review the judgment of the circuit court of Sangamon county affirming an award of the State Industrial Commission in favor of Thomas F. Clark, administrator of the estate of Thomas Clark, deceased. The circuit court has granted a certificate that the cause is a proper one to be reviewed by this court.

Several questions are raised and argued in the briefs. It is first necessary to consider and decide whether there can be a recovery in this' cause under the Illinois Workmen's Compensation act or whether the cause is comprehended within the meaning and scope of the Federal Employers' Liability act. It is contended. by the plaintiff in error that the deceased was employed in interstate com-

merce, and if this position is sustained it will be unnecessary to consider the other questions involved.

The plaintiff in error filed a special appearance denying that the commission had jurisdiction, for the reason that at the time deceased received the injuries which resulted in his death plaintiff in error was engaged in interstate commerce and the deceased was employed and working in such interstate commerce, and that therefore the Federal Employers' Liability act controls, superseding all State laws on the subject.

The evidence showed that Sangamon avenue is a main traveled highway running into the city of Springfield and that it crosses the tracks of plaintiff in error and of the Chicago, Peoria and St. Louis Railroad Company at the point where this accident happened. At this point there are six railroad tracks running practically north and south. Beginning at the east side and crossing west the tracks are as follows: The Alton lead going into the yard; the north-bound main of the Alton; the south-bound main of the Alton; the Chicago, Peoria and St. Louis main; the Chicago, Peoria and St. Louis mine switch, and the Alton mine switch. These tracks all parallel each other close together. The nearest highway crossing south of this point is about half a mile away and the nearest highway crossing north is about a mile. The traffic of the city converges across this crossing. There is a coal mine about 200 yards north of Sangamon avenue, on the west side of the tracks. In addition to the ordinary vehicular and pedestrian traffic across these tracks there are heavy loads of farm products and coal and great numbers of automobiles and automobile trucks that cross there. An ordinance of the city of Springfield required these railroads to jointly maintain a flagman at the Sangamon avenue crossing, and by a contract between the roads the Alton employed the flagman and paid his wages and the Chicago, Peoria and St. Louis Railroad Company reimbursed the Alton for one-third of the cost.

Pursuant to this contract the Alton employed Thomas Clark as such flagman. On September 17, 1916, while the deceased was on duty at this crossing, a train of the Chicago, Peoria and St. Louis Railroad Company approached the crossing from the south on its tracks and at the same time an automobile was approaching on Sangamon avenue from the east. Deceased moved over from the shanty to the track of the Chicago, Peoria and St. Louis Railroad Company, with his flag in his hand, holding it out, apparently to signal the automobile, and while standing on the rail of said track the train struck him in the back, killing him. There was no engine or train of the Alton approaching Sangamon avenue on any of the Alton's tracks from either direction at the time. The train which struck and killed Clark was carrying interstate freight. Practically all of the freight trains of the Alton which cross Sangamon avenue at this point carry interstate freight. All the tracks at this crossing are used indiscriminately for intrastate and interstate commerce.

The commission has found that the injury which resulted in the death of Thomas Clark arose out of and in the course of his employment by the Alton. Deceased was employed by the Alton for the purpose of preventing collisions between pedestrians or vehicles using Sangamon avenue and trains using the railroad tracks which crossed Sangamon avenue. He was employed to keep the tracks clear, so that nothing would interfere with the movement of the trains of plaintiff in error. A flagman not only protects the public from being run down by locomotives, but he likewise protects the railroad company from having its trains derailed and its equipment put into disorder by a collision with something upon its right of way. The main consideration heretofore with reference to maintaining flagmen has been the danger to the public which uses the crossing. With the coming into use of the automobile and the heavy automobile truck new considerations have arisen. A

ponderous, swiftly-moving locomotive, followed by a heavy train, is subjected to slight danger by a collision with a crossing pedestrian or a span of horses and a light vehicle, but when the passing vehicle is a ponderous steel structure a collision threatens not only the safety of its occupants or load but also the safety of the passengers or freight on the colliding train. The record here clearly shows that a collision of a train with one of these heavy automobile trucks or wagons loaded with farm products or coal would in all probability demolish the vehicle and scatter its burden all over the crossing as well as derail the train and tear up the equipment of the railroad company Such a collision on one of the six tracks would in all probability tie up all of the tracks for a time.

Was Thomas Clark, at the time he received this injury, engaged in interstate commerce? "A railroad track used indiscriminately by a carrier in both its interstate and intrastate commerce is an instrumentality of interstate commerce, and, * * * notwithstanding its double use, those engaged in its repair or in keeping it in suitable condition for use are, while so engaged, employed in interstate commerce. Such work, it is said, is so closely related to such commerce as to be, in practice and in legal contemplation, a part of it. * * * Thus, it is clear that one employed in actually removing from the track any obstacles to the passage of trains, caused by a derailment or other accident, would be employed in interstate commerce in view of the decisions of the United States Supreme Court. He would be directly engaged in the repair of and putting again into condition for use that instrumentality of interstate commerce. The question here is, in the light of the evidence, a very narrow one, and is simply whether the principle of these decisions is applicable to one whose duties are, in part, to keep the track free of such obstructions to the uninterrupted passage of trains according to schedule as may be caused by passing vehicles. So far as the relation of

such an employee to one attempting to cross the track is concerned, it may be conceded that there is no ingredient of interstate commerce, and that, if the only consequence to be avoided by the employment was that of injury to such a person, the act of Congress relied on would not be applicable. But in the light of the evidence it seems to us that the scope of the employment. in which deceased was engaged at the time of the accident was broader and extended to keeping the track itself in a suitable condition for use as an instrumentality of interstate commerce. In view of the evidence, the work of such a crossing gateman or flagman, so far as the railroad is concerned, is similar, in principle, to that of the track-walker, whose duty it is to see that the track is in a safe condition for the passage of trains; to that of the employee in the signal tower, whose duty it is to supervise and give signals for the passage of trains; and to that of the employee engaged in repairs on the automatic signal apparatus with which this petitioner's line is equipped. All such employees may fairly be said, it seems to us, to be directly engaged, in substantial part, at least, in keeping the track in suitable condition for use. * * * The duties of deceased, as we have seen, had to do directly with the keeping of an instrumentality of interstate commerce in suitable condition for the use of such commerce, and, exactly as in the case of one engaged in repairing such an instrumentality after injury thereto has occurred, who, concededly, is engaged in interstate commerce, it is immaterial whether or not any interstate traffic was immediately to be had over the same. The deceased was actually engaged, at the moment of the accident, in protecting that instrumentality from injury. His situation in this regard was, in view of the evidence, the same as it would have been if he had been one of a number of guards stationed along the line of railroad to prevent third persons from removing the rails or unlawfully placing obstructions on the track. Certainly their work would not be held to

be unrelated to the safety of the track as a highway of interstate commerce."

This quotation is from *Southern Pacific Co.* v. *Industrial Accident Com. of California,* 174 Cal. 8, and it is a case strikingly in point. There a crossing flagman was engaged in flagging the highway for an intrastate train and yet he was held to be employed in interstate commerce, where there was evidence that the track which he was protecting was used indiscriminately for intrastate and interstate commerce. The same reasoning was adopted in *Southern Pacific Co.* v. *Industrial Accident Com. of California,* 174 Cal. 16, where the flagman was working at the crossing of a side-track connecting the main line with the freight depot, the side-track being used indiscriminately for intrastate and interstate commerce. In arriving at this conclusion the California court cited *Texas and Pacific Railway Co.* v. *Rigsby,* 241 U. S. 33, which was a case where a switchman was engaged in taking some "bad order" cars to the shops to be repaired. The cars had been in service for about a month. The switching crew had pulled the bad order cars off the siding onto the main and left them there while the engine moved some other cars. The switchman climbed on the cars to lock the brake and while coming off one of these cars he fell because of a defective handle. In speaking of whether or not this injury came within the scope of the Federal Employers' Liability act the United States Supreme Court there said: "The doing of plaintiff's work, and his security while doing it, cannot be said to be wholly unrelated to the safety of the main track as a highway of interstate commerce, for a failure to set the brakes so as temporarily to hold the bad order cars in place on that track would have been obviously dangerous to through traffic."

In *Plass* v. *Central New England Railway Co.* 221 N. Y. 472, it is said: "The Central New England Company was a corporation engaged in both intrastate and interstate com-

288 — 39

merce. The husband of the claimant, while employed by it in cutting grass and removing poison ivy and other weeds along the line of its railroad in New York State, contracted ivy poisoning, which caused his death. * * * If there was any evidence that the work contributed to the safety and integrity of the railroad the work was connected with and a part of interstate commerce by the railroad. * * * The object of the work was the safety of the bridges of the railroad and of the adjoining property and to keep fires from spreading. If the grass and weeds caught fire it might destroy parts of the railroad, and the weeds and grass not cut and removed would to a certain extent destroy the track,—would come upon the track and cause the engines to slip."

In *Graber* v. *Duluth, S. S. & A. Railway Co.* 159 Wis. 414, it is said: "The test of whether the Federal act applies to any particular situation is not whether the particular person directly causing the injury was at the time thereof engaged in interstate business nor whether the act in which the person was engaged was exclusively an interstate commerce service, but whether the person or corporation charged with liability was engaged, at the time it occurred, in such commerce and the particular service in progress and environing or characterizing the employer's activity at the time of the injury was of that nature, its cast in that regard being efficient if the work was a substantial part of interstate commerce. * * * If the particular act in any substantial part is within the interstate field, then the Federal law rules the situation if either party sees fit to stand upon legal right in the matter. * * * The law does not permit of splitting up a service which is in its nature an entirety, into its various steps or elements. Work in the repair of a bridge, as was said, which is used in intrastate as well as interstate business and is indispensable to both, and in moving material to the location of the bridge for the purpose of its repair, and in moving an

engine from the round-house to be used in hauling an inter-
state train, and work partly intrastate and partly interstate,
as in preparing an engine to go out with a train made up
of cars in interstate and intrastate service, are all parts of
an entirety having the efficient interstate commerce features
required by the Federal act. All work so closely related to
interstate commerce business as to be practically inseparable
from it, though it promotes at the same time intrastate busi-
ness, is in reality and legal effect a part of the former."

A railroad servant killed by a passing train while shov-
eling snow on a railroad company's premises between a
platform and the tracks, used indiscriminately for interstate
and intrastate commerce, was then employed in interstate
commerce. (*New York Central Railroad Co.* v. *Porter,* 39
Sup. Ct. 188.) A section laborer killed while working on
the main track of a railroad used for interstate and intra-
state commerce was held to be employed in interstate com-
merce, and that the consequent rights and liabilities arose
under the Federal Employers' Liability act and the State
statute did not apply. (*New York Central Railroad Co.*
v. *Winfield,* 244 U. S. 147.) In *Pedersen* v. *Delaware,
Lackawanna and Western Railroad Co.* 229 U. S. 146, an
ironworker employed by the railroad company in repairing
bridges and tracks was carrying some bolts with which
to fix a girder in a bridge. This bridge supported tracks
used indiscriminately for interstate and intrastate com-
merce. While crossing an intervening temporary bridge
being used in both interstate and intrastate commerce he
was run down by an intrastate passenger train. It was
held that the railroad company was engaged, and Pedersen
was employed by it, in interstate commerce. The court
said: "Among the questions which naturally arise in this
connection are these: Was that work being done independ-
ently of the interstate commerce in which the defendant
was engaged, or was it so closely connected therewith as
to be a part of it? Was its performance a matter of in-

difference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depend in large measure upon this being done."

The Federal Employers' Liability act makes it clear that every common carrier by railroad, while engaged in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by such carrier in interstate commerce under conditions set forth in the act. In *Staley* v. *Illinois Central Railroad Co.* 268 Ill. 356, at page 376, we said: "Counsel for plaintiff in error argue that the title of the Federal Employers' Liability act, especially the phrase 'certain cases,' shows that Congress did not intend to cover all cases of injuries occurring on railroads while engaged in interstate commerce. With this we do not agree. We think the phrase 'in certain cases' was inserted * * * to limit it [the act] to those cases where the liability arose in interstate commerce. The wording of the statute and the reasoning in these decisions [decisions cited and discussed at length in the opinion] lead inevitably to the conclusion that 'the particular subject,' 'subject matter,' 'field' or 'chosen field' taken possession of by the Federal Employers' Liability act was the employer's liability for injuries to employees in interstate transportation by rail, and the real question, as clearly stated in distinct terms in several of the cases that we have quoted from in deciding whether the Federal statute is applicable, is whether the injury for which the suit was brought was sustained while the company and the injured employee were engaged in interstate commerce. The Federal Employers' Liability act has taken possession of—has occupied—that field for the purpose of calling into play therein this exclusive power of the

Federal government. Necessarily, all common or statute law of this State on that subject has been superseded. The field of liability as to employees injured while engaged in interstate commerce on railroads is occupied exclusively by the Federal Employers' Liability act,—and that, too, regardless of the negligence or lack of negligence of either party to the litigation."

In *Dickinson* v. *Industrial Board,* 280 Ill. 342, we held that if the work at which an employee is engaged at the time of his injury is a part of the interstate commerce in which a railroad is engaged he is not entitled to compensation under the State Compensation law but only under the Federal Employers' Liability act, if at all. We there said with respect to what constituted an employment in interstate commerce: "His employment need not be directly in the transportation of goods from one State into another or in the operation or movement of trains. If he is engaged in the operation, maintenance or repair of any of the instrumentalities used by the carrier in the transportation of goods from one State into another he is engaged in interstate commerce." In the instant case deceased was engaged in the maintenance of the good order of the tracks of plaintiff in error,—one of the instrumentalities used by it in the transportation of goods in interstate commerce.

It has been contended by defendant in error that while the deceased may have been killed by a train engaged in interstate commerce he was not killed by a train of the plaintiff in error; therefore he was not engaged in interstate commerce of his employer. We cannot agree with this view. If an employee is engaged in protecting the instrumentalities of the interstate commerce of his master and is killed in the course of this employment, his injuries arise out of his employment and the cause is one within the scope of the Federal Employers' Liability act, regardless of who inflicts the injury causing the death.

In *Ruppell* v. *New York Central Railroad Co.* 157 N. Y. Supp. 1095, the defendant and another road used a common switching yard. The deceased was employed by the defendant, but at the time of his injury and death he was assisting in making up a train for the other user of the yards and received his injury by the negligence of the employee of the other user of the yards. In discussing this case the court said: "But the cars being made up into a train were not owned by defendant or to be run over its lines. They were passenger coaches to be run by the New York, New Haven and Hartford Railroad Company over its tracks to Springfield, Massachusetts. It is urged, therefore, that although deceased [a brakeman on one of these cars] may have been employed in interstate commerce he was not so employed by the defendant. Where, however, two railroads use a common switching yard in which the employees of one carrier form a switching crew which is actually making up cars into a train all of which is to go beyond State lines, those engaged in such switching are under the protection of the Federal act even if they are not moving the cars of their immediate employer. In such case this use of its switching crews makes the employer engaged in interstate commerce."

We therefore conclude that Thomas Clark, deceased, was at the time of his injury employed in interstate commerce, and that the liability of the plaintiff in error is entirely fixed and governed by the Federal Employers' Liability act. It follows that the Industrial Commission did not have jurisdiction of this proceeding, and the circuit court erred in not quashing the proceedings, record and award of the Industrial Commission.

The judgment of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*