This case is before the court upon a writ of error to review an order of the circuit court of Cook county confirming an order of the Industrial Commission approving an award of an arbitrator, under the Workmen's Compensation act, for $17 per week for a period of 250 weeks, against plaintiff in error and in favor of Nellie Rogers on account of the death of her husband, Charles J. Rogers, an employee of plaintiff in error.
For some time prior to his death, on February 16, 1924, Charles J. Rogers, the husband of defendant in error, Nellie Rogers, had been employed by plaintiff in error as a train rider. A train rider is a special police officer whose duty it is to protect his train from car thieves. The deceased *Page 621 
was, and had been for months prior to his death, regularly assigned to ride and protect a train known as the "Michigan Merchandise," an interstate freight train operating nightly, except Sundays, between Chicago and Michigan City, Indiana. He rode another interstate train back to Chicago the same night, completing a round trip. When his train is made up a train rider is obliged to examine the seals on all of the cars in his train and examine all of the car doors to see that they are securely fastened. As soon as a train rider completes his examination of the seals and car doors and the train proceeds away from his terminal, it is his duty to observe the train from a point of vantage so as to guard against the operations of car thieves. If the train is stopped he is required to alight from the train on the ditch side, where thieves are most likely to throw stolen goods, and walk around the train on the lookout for thieves. Rogers' train out of Chicago was made up in the general vicinity of Randolph street. For the period of about three months prior to February 16, 1924, plaintiff in error employed another train rider named Joseph Burk, who was regularly assigned to ride and protect another train out of Chicago to Michigan City which was made up in the same vicinity as was the Michigan merchandise train and which was scheduled to leave Chicago about an hour after the departure of the Michigan merchandise, the two trains being scheduled out at 5:45 and 6:45, respectively, on all week days except Saturday. Neither of these two trains was regularly scheduled out of Chicago on Saturday nights, but Burk's train usually left Chicago ahead of Rogers' train. In January, 1924, it was ordered that on Saturday nights, because of the irregularity of the schedule, the first of the two men down to work should take the first train out. On February 16, 1924, which was a Saturday night, the Michigan merchandise train left Chicago at 6:10 P. M., with Burk as rider. Train "N.Y. 2" left Chicago at 7:20 P. M. Rogers was killed at 6:40 P. M. that same night. He met *Page 622 
his death while walking north on Illinois Central track No. 2, — a main line suburban track. He had not yet reached Harrison street, where plaintiff in error's tracks have their southern terminus in the yards. An Illinois Central suburban train, drawn by an Illinois Central engine pulling six empty coaches, struck Rogers as it was proceeding north on the same track.
The Illinois Central railroad passenger station in the city of Chicago is located at Twelfth street, just east of Michigan boulevard. Some distance north of that station is the Randolph street suburban passenger station of the same railroad company. Between Twelfth street on the south and Randolph street on the north, and continuing north beyond Randolph street and South Water street to the Chicago river, are various railroad tracks. Some of these tracks are owned by the Illinois Central Railroad Company and some by the Michigan Central Railroad Company, but the latter company owns no tracks south of Harrison street and north of Twelfth street. Between those points it operates over the tracks of the former company. All of these tracks leading north from Twelfth street to the Chicago river are depressed about fourteen feet below the adjacent street levels. A person desiring to enter upon the tracks from the west between Twelfth street on the south and Randolph street on the north may enter only at Twelfth street, VanBuren street and Randolph street. The yard offices of plaintiff in error are situated at Monroe street, which is between VanBuren and Randolph streets.
The case presents for our consideration two questions: First, Did the accidental injury sustained by Charles J. Rogers arise out of and in the course of his employment? Second, Was Rogers employed in interstate or intrastate commerce at the time he sustained the accidental injury?
On the first question the facts are not in dispute. Rogers was employed by the Michigan Central Railroad Company, and the place where he commenced performing his *Page 623 
duties was in the railroad yard of that company about Monroe street, just east of the Illinois Central right of way and immediately west of Lake Michigan, in the city of Chicago. He was struck by an Illinois Central passenger train on the Illinois Central right of way about Harrison street, adjacent to the track over which his train must pass, at 6:40 P. M. on February 16, 1924, just prior to the time his train ordinarily passed that place.
If the accident which resulted in the death of Rogers arose out of and in the course of his employment by plaintiff in error then at the time of the accident he must have been engaged in interstate commerce, as the only duties which the evidence shows he had, as an employee of plaintiff in error, were duties pertaining to interstate commerce. InWheelock v. Industrial Com. 318 Ill. 537, it was held that a police sergeant employed by a railroad company to watch shipments of freight out of a certain city, riding whatever trains he was ordered by his superior officer to ride for a certain distance out of the city, was engaged in interstate commerce, where it was his duty to guard the freight, regardless of whether it was consigned to an intrastate or interstate destination, and that the fact that on the particular occasion of his injury he was guarding an intrastate shipment did not bring him within the Compensation act. If an employee of a railroad, while engaged in interstate commerce, is killed in the course of his employment, his injuries arise out of the employment and the case is within the scope of the Federal Employers' Liability act and not the Workmen's Compensation act. Chicago and Alton Railroad Co. v. IndustrialCom. 288 Ill. 603; Pittsburg, Cincinnati, Chicago and St. LouisRailroad Co. v. Industrial Com. 291 id. 396; P. R.Ry. Co. v. DiGonato, 256 U.S. 327.
The order of the circuit court must therefore be reversed.
Order reversed. *Page 624