V. C. Dunn, Appellee, v. The Chicago, Rock Island &
Pacific Railway Company, Appellant.

Gen. No. 32,109.

Opinion filed February 23, 1928,

Daniel Taylor, for appellant.

Charles C. Spencer and Murphy O. Tate, for appellee.

Mr. Justice Holdom delivered the opinion of the court.

This is an action on the case for personal injuries, brought by the plaintiff Dunn, a passenger, against the Chicago, Rock Island & Pacific Railway Company, a common carrier of passengers for hire.

Originally the declaration contained seven counts and thereafter one additional count. On the trial the third and sixth counts were withdrawn by plaintiff. The remaining counts of the declaration alleged that on the 17th day of September, 1926, plaintiff became a passenger on one of defendant's trains at Hamilton Park Station, located near Seventy-Second street, Chicago, and that he was caused to fall or be thrown from one of the cars of the train and was injured. The first count charged that the servants of defendant carelessly, negligently and improperly caused their train to give a sudden jerk or violent lurch while plaintiff was at the rear end of one of the cars, resulting in plaintiff's being thrown from the train.

The second count charged generally careless, negligent and improper management, operation and control of the train.

The fourth count alleged that the servants and agents of the defendant carelessly, negligently and improperly left the rear gates on the rear platform of the coach upon which the plaintiff was riding open, and plaintiff while passing from one coach to another was caused to slip and fall from the rear platform of said coach to and upon the railroad track and right of way of the defendant.

The fifth count alleged that the servants of the railroad company carelessly, negligently and improperly

left the gates on the rear platform of the car, upon which plaintiff was riding, open and that while plaintiff was standing or walking on said platform, he, as a direct and proximate result of such negligence was caused to fall from the platform.

The seventh count charged that the gates on the rear of the coach upon which plaintiff was riding were carelessly, negligently and improperly left open, and that the plaintiff, while going or attempting to go out on said platform was thrown or caused to fall from the platform by a sudden lurch or jerk of the train.

The additional count of the declaration pleaded section 32 of the Public Utilities Act, Cahill's St. ch. 111a, ¶ 47, which in general terms requires every public utility to furnish such service, instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, etc., as shall be in all respects adequate, efficient, just and reasonable; alleged that the gates between the car in which plaintiff was riding and the adjoining car of said train were negligently opened and allowed to remain open, thereby causing plaintiff, while lawfully passing from one care to another, to fall from said train, as a result of which he was injured.

To the declaration as thus constructed the defendant interposed a plea of the general issue.

There was a trial before court and jury resulting in a verdict against defendant and an assessment of $50,000 as damages. On argument of the motion for a new trial plaintiff remitted one-half of the verdict, upon which judgment of $25,000 was entered.

Defendant brings the record here by appeal for our review, and argues, for reversal, error in the trial court's refusal to instruct a verdict in its favor that defendant was not guilty of negligence in the lurch of the train; that no duty by law was cast upon defendant to keep the gates of the platform of its cars closed, and that plaintiff was guilty of contributory negligence;

contributing to the accident; error in the giving of plaintiff's instruction and in refusing to give instructions 14, 15 and 16 proffered by defendant; also argues that the verdict is the result of passion and prejudice, and error in denying defendant's motion for a new trial.

The evidence develops that the train on which plaintiff was a passenger consisted of nine wooden cars, and that the train is what is known as a suburban train as distinguished from a through train; that plaintiff embarked at Hamilton Park Station, at Seventy-Second street, Chicago, and his destination was the La Salle Street Station, at Van Buren street, Chicago; that when plaintiff boarded the train the platform gates were open on the east side of the car he boarded and closed on the west side; that plaintiff took a seat on the west side of the car in the rear; that plaintiff paid his fare with a commutation ticket; that as the train was on its way to its destination, after passing the Englewood Station, plaintiff became nauseated, and had a feeling that he had to vomit; that he arose and started to the rear of the car in an attempt to seek a toilet, thus enabling him to relieve himself of the nausea. When he reached the toilet he found it locked. Thereupon he started to cross the platform into the adjoining car at the rear in on attempt to find an open toilet. He opened the door and walked on to the platform, when there was a sudden side swing or lurch of the car, and, owing to the speed of the train and the lurch, plaintiff lost his equilibrium and was thrown to the west of the car. The gate on the platform there being open, he was thrown off the train and on to the right of way of the defendant and severely injured. He testified that he made a grab as he fell to catch something by which he might arrest his fall; that he subconsciously or momentarily noticed that the gate was open; that the feeling of nausea came to plaintiff suddenly about a couple of moments before he left his seat, and that such an attack was an entirely unusual occurrence with him; that the train made no

stops between Englewood and the La Salle Street Station, a distance of about seven miles.

The evidence on behalf of plaintiff was to the effect that it was the custom of the defendant railroad to keep the gates on the west side of the train closed north of Englewood to the terminal for the safety of passengers. Plaintiff testified further that he did not know that the west gate had been opened until the instant that he was thrown off the train by the sudden lurch of the car. The platforms between the cars were open for the use of passengers passing from one car to the other, but there were no gates between the cars. There was no sign forbidding passengers to pass from one car to the other when the train stopped or while it was in motion, and the evidence demonstrates that it had been the custom for many years for passengers to pass from one car to the other while the train was in motion, and that the cars were so constructed as to facilitate such movements of passengers.

The ticket collector on the train testified that "there are no signs prohibiting passengers from passing from one coach to another. It is almost the universal custom of passengers if they are in one car and it is crowded, or if they have a necessity to go, to walk through from that one car to the other while the train is in motion. Frequently, people getting on at one of the suburban stations walk through to the next car to a seat."

The accident happened near Forty-First street and the ticket collector testified that he had opened the gates on the west side of the platform of the car between Englewood and Forty-First street. Another ticket collector testified that the gate on the west side of the car from which plaintiff was thrown was closed when the train left the Englewood Station, and that he opened the gate sometime after leaving Englewood and before the happening of the accident at Forty-First street.

It is in evidence for defendant, in an attempt to justify the opening of the gate on the west side of the train, that the trainmen could not know on what track in the La Salle Street Station, its destination, the train was going on until it got very near the station and for that reason they had the gates open on both sides of the train before entering the La Salle Street Station. On through trains it was the practice to wait until the trains actually pulled into the station before the gates were opened for the discharge of passengers.

It is strenuously argued by defendant that plaintiff was guilty of contributory negligence in being upon the platform of the car; that the platform is not a place for a passenger to ride upon. Many cases are cited in support of this contention, but we find in every one of these the exception that where a passenger is justified in going out on the platform or from one car to another, either of necessity, or by the express or implied invitation of the carrier, and that in so doing he is injured as a proximate result of the carrier's negligence, the rule does not apply.

Among those cases cited by defendant is *Savage v. Illinois Cent. R. Co.*, 164 Ill. App. 634, which is a well-considered opinion with ample citation of authority by the late Mr. Justice Willis where the exception to the general rule is stated.

We are of the opinion that plaintiff's case comes within the exception to the general rule. Plaintiff was suddenly and unexpectedly afflicted with nausea. He was seeking a toilet where he might in a rational way relieve himself. While toilets were in some of the cars, they were locked and inaccessible. Meeting this emergent condition and with due regard for decency he sought the platform of the car, and without any fault of his own, but owing to the west gate of the car being open, he was thrown from the platform upon the right of way of the company, and very seriously injured, the extent of which will be discussed in deciding whether

the amount of damages awarded were excessive or not.

Under the condition disclosed by the evidence in this case it was incumbent upon the defendant railroad to keep the gates to the east and west sides of the platform of its several cars closed while the train was in operation for the safety of passengers, who in transit were moving across the car platforms from one car to the other. That duty rested upon the company for the protection of its passengers walking for any lawful purpose from one car to another.

It was negligence on the part of the defendant railroad company to have the platform gates open between stations while the train was in motion. If the west gate of the platform had been closed, as it should have been, the accident could not have happened. This was the negligent act which fixes liability on defendant to plaintiff for the accident and his injuries suffered in consequence thereof.

Plaintiff's presence upon the platform was justified from the fact that he was *in extremis* from nausea, which forced him to that position. This situation distinguishes this case from the cases cited by defendant where a passenger was improvidently on the platform of the car when he was injured. The negligence of defendant to which the accident was proximately attributed was that the gate on the platform from which plaintiff fell was open. The negligent act was not the swerving or jerking of the car which was being propelled at a rapid rate of speed made necessary in the operation of defendant's cars in its suburban service at the point of the accident, as the accident could not have happened had the gate not been open when it should have been shut. The purpose of the gates on the platform primarily was for the protection of passengers lawfully upon them as was plaintiff when the accident occurred in manner above recited. As a matter of fact plaintiff was not riding upon the platform. He was in search of an open toilet to relieve himself

from nausea, and was passing over the platform when the accident happened, on his way to discover an open toilet. Therefore plaintiff was not guilty of contributory negligence in being upon the platform at the time of the accident.

A careful examination of all of the instructions given at the request of both parties, we think, demonstrates that the jury was sufficiently instructed on both defendant's and plaintiff's theories of the case, and particularly so as to defendant's theory of its defense, and that the trial judge did not commit error in refusing to give instructions 14, 15 and 16, proffered by defendant.

Instruction 14 had the infirmity of being by construction a peremptory instruction to find the defendant not guilty. Instructions 15 and 16 likewise instructed a verdict. The 16th instruction in effect told the jury plaintiff had no right upon the platform at the time of the accident. This was a total disregard of the facts in evidence and contrary to the contention of plaintiff, which found ample support in the evidence. Neither did the court err in refusing to instruct a verdict for the defendant upon its motion.

It is argued with great force that the verdict of $50,000 is the result of passion and prejudice of the jury before whom the case was tried. Plaintiff was a young man 23 years of age, who had his business life and career before him. He has been maimed and disfigured by the negligent conduct of defendant. One leg has been severed below the knee, and the other so fractured and displaced inwardly that the movement of the ankle is seriously hampered by the excess of callous formation, and there are sharp pieces of bone on the stump projecting up into the flesh, which made the wearing of an artificial leg at the time of the trial a practical impossibility, and it is said that osteomyelitis or rotting of the bone is present, which will necessitate an additional operation; that plaintiff has lost

weight and is in a greatly run down physical condition. These injuries are all terrible handicaps to the plaintiff in every way, in all his walks in life. He is not able to get around with that celerity of the average young man of his age; his health is likewise impaired, so that he cannot in all probability ever enjoy the health of a man of his years, or be able to accomplish physical tasks which he could have accomplished but for the terrible injuries which he has suffered as the result of the negligence of defendant in the manner above described in this opinion. It is almost impossible to accurately measure the damages which plaintiff has sustained, and will continue to sustain, as the result of his injuries. It therefore became the duty of the jury to fix the amount to the best of their ability, as they did, and we cannot say that even the amount of the verdict as originally found, in view of the whole case and plaintiff's crippled condition, was more than reasonable compensation for his severe injuries, and the judgment for $25,000, after acceding to the court's suggestion of a remittitur of half the verdict, is, we think, but scant compensation to plaintiff under all of the circumstances arising from the very serious injuries suffered as the result of defendant's failure to accord to plaintiff that protection which the law exacts from common carriers toward persons who intrust themselves to their care for transportation of their persons. The trial court did not err in overruling defendant's motion for a new trial.

Finding no reversible error in the record, the judgment of the superior court is affirmed.

*Affirmed.*

TAYLOR, P. J., and WILSON, J., concur.