Eugene Bolle, Appellee, v. Chicago & Northwestern Railway Company, Appellant.

Gen. No. 8,145.

Heard in this court at the October term, 1929. Modified opinon filed September 23, 1930. Rehearing denied September 23, 1930.

Nelson J. Wilcox and I. C. Belden, for appellant.

Ryan & Rosenthal and Paul MacGuffin, for appellee; Joseph D. Ryan, of counsel.

Mr. Presiding Justice Boggs delivered the opinion of the court.

Appellee instituted an action on the case in the circuit court of Lake county against appellant, to recover damages under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, for an injury alleged to have been sustained by him.

The declaration consisted of three original and one additional count. The third original count seems to have been withdrawn. The first count, among other things, charges that appellant and appellee were both engaged in interstate commerce; that appellee had been hired to work as a fireman of a stationary boiler used to heat the passenger depot and certain other buildings; that on December 4, 1925, the boiler was out of repair and a locomotive was substituted, which appellee fired, and was ordered to accompany such locomotive to Beach where it would be supplied with coal and water; that it was coupled to three other engines, in which were experienced employees; that appellee accompanied said engine to Beach and fired the same en route; that after the arrival at Beach, appellee got on the tender of the heater engine and adjusted the coal slide for the purpose of filling the tender with coal; that while coal was being emptied into the tender "he was in an obviously dangerous and exposed position in the event that the engines should be moved, to the knowledge of the other employees, who, disregarding their duty, negligently and without notice or warning to plaintiff, moved the engines with a sudden and violent jerk, and plaintiff was caught and crushed between the coal slide and the cab of the engine."

The second count charges among other things that, while standing on the tender of said engine and in an obviously dangerous position, which was known or could have been known to the other employees of appellant, said engine was moved without ringing any bell, contrary to the rules of appellant. The additional count charges that appellee, in the due course of his employment, got on the tender and took coal and water, and, while doing so, appellant negligently and without notice or warning moved the engine with a sudden jerk and appellee was caught and crushed, etc.

To said declaration appellant filed a plea of the general issue, with notice of the special defenses of contributory negligence and assumed risk on the part of appellee.

A judgment for $20,000 was recovered and, on appeal to this court, said judgment was reversed and the cause was ordered remanded. Thereupon appellee filed an affidavit to the effect that, upon another trial, he could offer no additional evidence to support his contention that he was engaged in interstate employment, and on his motion the remanding order was stricken. (*Bolle v. Chicago & N. W. Ry. Co.*, 235 Ill. App. 380.)

The Supreme Court reversed and remanded the cause with directions that this court either affirm the judgment or reverse it and remand the cause. (*Bolle v. Chicago & N. W. Ry. Co.*, 324 Ill. 479.) Thereupon an order was entered remanding the cause. (*Bolle v. Chicago & N. W. Ry. Co.*, 246 Ill. App. 31.) On the second trial, the evidence was excluded and a verdict was directed in favor of appellant. On appeal to this court, we held that the court erred in directing a verdict, and reversed and remanded the cause. (*Bolle v. Chicago & N. W. Ry. Co.*, 251 Ill. App. 623.) Said cause was again tried, resulting in a verdict and judgment in favor of appellee for $37,500. To reverse said judgment, appellant prosecutes this appeal.

It is first contended that the court erred in refusing to direct a verdict in favor of appellant, on motions made at the close of appellee's evidence and again at the close of all the evidence, for the reason: First, that there is no evidence in the record fairly tending to prove that at the time of appellee's injury he was engaged in interstate commerce; second, that the evidence in the record does not fairly tend to support the allegation of negligence on the part of appellant.

Counsel for appellant while conceding in effect that the Supreme Court and this court have heretofore passed on the first proposition adversely to it, contend that such holding is not supported by the authorities and insist that the question of whether an employee is engaged in interstate commerce, is one of law for the court. It has frequently been held that such question may become one of fact, for the determination of a jury. *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146–153; *North Carolina R. Co. v. Zachary*, 232 U. S. 248; *Southern Ry. Co. v. Lloyd*, 239 U. S. 496–501; *Pennsylvania Co. v. Donat*, 239 U. S. 50–52. As to the first proposition, the court did not err in its ruling.

On the question of negligence, appellant's motion to direct a verdict at the close of all the evidence raised the legal question as to whether there is any evidence in the record which, with its reasonable intendments and inferences, fairly tends to prove the averments of the declaration. *Chicago City Ry. Co. v. Martensen*, 198 Ill. 511–513; *Chicago City R. Co. v. Loomis*, 201 Ill. 118–119; *Mahlstedt v. Ideal Lighting Co.*, 271 Ill. 154–163; *Peters v. Chicago Rys. Co.*, 307 Ill. 202–205. So tested, we hold that the court did not err in its ruling.

It is also insisted that, even though it be held that the question as to whether appellee was engaged in interstate commerce was one of fact, the finding of the jury that he was so engaged is against the manifest

weight of the evidence. The employment and duties of appellee prior to and at the time of his injury are so fully and clearly set forth in the opinion of the Supreme Court that we here adopt the same:

"On November 15, 1925, plaintiff was employed by defendant in Waukegan.. His duties consisted of watching engines in the roundhouse, sanding them, turning turntables, and other duties in the roundhouse with reference to engines engaged in both interstate and intrastate commerce. He also fired the stationary boiler, or the locomotive engine which was substituted when the boiler was out of service, which supplied heat to the defendant's passenger depot, baggage room in depot, coach yard pipes, roundhouse foreman's office, engineers' and firemen's register and locker room, engineers' and firemen's bunkhouse, bridge and building maintenance bunk-car, bridge and building carpenter foreman's office and shop, and signalmen's maintenance-of-way car. The bridge and building car was used as living quarters by employees of defendant who were engaged in the service of repairing bridges and buildings. The heating plant in. question which heated this bridge and building car also conveyed heat or steam through the yard pipes which were used to heat passenger coaches. These yard pipes could be used to heat the cars in any train if necessity required it. The signal maintenance-of-way car was used by the signalmen for keeping their supplies used in the maintenance-of-way department. These latter employees were engaged in taking care of all signaling devices in their territory. Whenever it got cold at night heat was supplied to these men where they were kept and housed. On December 4, 1922, this stationary boiler was temporarily out of repair and plaintiff was firing the locomotive engine which supplied heat to the various buildings. He went to work about four o'clock in the afternoon and about nine o'clock in the evening

he was directed to accompany his engine to Beach, in defendant's yards, about four miles north of Waukegan station, for coal and water. The engine and tender were thereupon attached to three other engines which had been engaged in interstate commerce and were then being prepared for interstate trips, and the four engines, being so coupled together, were propelled northward by the most northerly engine, which was immediately north of the engine upon which plaintiff was riding. The four engines so coupled together arrived at Beach and the engine of plaintiff took water, but before the tank was completely filled the engines were moved north to a sidetrack in order to permit an interstate train to pass. The engines remained on the sidetrack only a few minutes, and then started back to the water tank and coal chutes, the motive power at that time being furnished by the most southerly engine. The engines stopped and the engine farthest south was supplied with coal. Again the four engines moved southward, the most southerly engine furnishing the power, and the second engine toward the south, and also the third one, upon which was plaintiff, were placed opposite the coal chutes. While engaged in taking coal the engine immediately north of plaintiff without notice or warning moved northward suddenly and plaintiff's leg was crushed between the cab of his engine and the coal chute, and as a result it became necessary to amputate his right leg above the knee." *Bolle v. Chicago & N. W. Ry. Co., supra,* 480.

It is not contended by counsel for appellant that the facts are not as above stated, but that, on the facts the finding that appellee was engaged in interstate commerce is not warranted by the evidence.

Where reasonable minds would draw different inferences from circumstances shown without contradiction, a question for the jury is raised. *Bolle v. Chicago & N. W. Ry. Co.,* 324 Ill. *supra,* 482; *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Frank v. Hoskins*

*Co.,* 323 Ill. 46–47. In *Bolle v. Chicago & N. W. Ry. Co., supra,* the court at page 482 says:

"Whenever an issue is made in a case, and evidence must be introduced to maintain the issue, controverted questions of fact are involved, which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony, or the evidence may be agreed upon or embodied in a stipulation of fact." Citing *Chicago Title & Trust Co. v. Ward,* 319 Ill. 201; *Frank v. Hoskins Co.,* 323 Ill. 46.

The question then for our determination is as to whether the finding of the jury on the facts stated is against the manifest weight of the evidence. The Supreme Court held that this was a question of fact, to be determined by the jury, and said (p. 482): "The evidence in the case was not such that all reasonable minds must necessarily agree that at the time of the accident plaintiff's employment was not such as to bring him within the provisions of the Federal Employers' Liability Act." It will be observed that appellee's general duties consisted of "watching engines in the roundhouse with reference to engines engaged in both interstate and intrastate commerce. He also fired the stationary boiler or the locomotive engine which was substituted when the boiler was out of service, which supplied heat to defendant's passenger depot, baggage room in the depot, coach yard pipes, roundhouse foreman's office, engineers' and firemen's register and locker rooms, etc."

While ordinarily the stationary engine was used in such heating operations, it frequently happened that a locomotive engine was used instead thereof. Such engine was being used on the day appellee was injured, and he had been ordered by Terasky, whom the evidence shows he was directed to take orders from, to accompany said engine to Beach for the purpose of supplying the same with coal and water. It was on this trip that he received his injuries. Appellee was

then engaged in a work so closely connected with his duties in operating said heating plant as to be a part of the same. In *Chicago & Alton R. Co. v. Industrial Commission,* 288 Ill. 603, the court at page 611 says:

"A railroad servant killed by a passing train while shoveling snow on a railroad company's premises between a platform and the tracks, used indiscriminately for interstate and intrastate commerce, was then employed in interstate commerce. (*New York Central Railroad Co. v. Porter,* 39 Sup. Ct. 188.)"

In *Dickinson v. Illinois Industrial Board,* 280 Ill. 342, the court at page 344 says:

"If his (the employee's) work constitutes a real and substantial part of the interstate commerce which the carrier is engaged in, the employee is engaged in interstate commerce; otherwise not. (*Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473; *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146; *Chicago, R. I. & P. Ry. Co. v. Industrial Board,* 273 Ill. 528.) His employment need not be directly in the transportation of goods from one State into another or in the operation or movement of trains. If he is engaged in the operation, maintenance or repair of any of the instrumentalities used by the carrier in the transportation of goods from one State into another he is engaged in interstate commerce. Section men repairing a track, carpenters repairing a bridge, machinists and car repairers working on engines and cars, and hostlers caring for engines, are engaged in interstate commerce if the track, bridge, engines and cars are used in interstate commerce. Their work has a direct and substantial connection with interstate transportation and is an essential part of it."

In *Pedersen v. Delaware, L. & W. R. R. Co., supra,* the court at page 152 says:

"The point is made that the plaintiff was not at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to

the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce.''

In view of the foregoing authorities, we hold that the verdict of the jury finding that appellee was engaged in interstate commerce at the time of his injury, was supported by the evidence.

It is also insisted that the verdict finding appellant guilty of negligence is against the manifest weight of the evidence.

Appellee testified that on the day in question he was ordered by Terasky to accompany the engine used in the heating operations to Beach for the purpose of supplying the same with coal and water; that he did so, and on arriving at the water tank, ''Terasky hollered at me to get up and take water. . . . In response to that direction I got up and took water''; that while so engaged he was directed by McManaman, who is shown to have been in charge of the trip, to throw the spout aside, as the engines had to be moved to a siding to let a train through; that the engines were then moved to the coal chute; that he was watching the engine to the south of him and saw a man on that engine let down the chute; that thereupon he lowered the chute for the purpose of coaling his engine and, without the ringing of a bell or other warning to him, said engines were moved and he was caught and crushed between said chute and the cab of his engine.

While the men in charge of the other engines all testified that they did not see appellee at the time in question, McManaman testified: ''Just before the acci-

dent happened, the coal chute man left some coal down to the second engine from the south; then he released the slide and it went up. Then I discovered that there was a man up on top of the third engine from the south. After the coal chute man put up his slide, I heard him tell the operator of the engine Kucera was on, the second engine from the south, to back up. I knew he (the man on the third engine) was up there because he had the coal chute down. . . . I had time, after I discovered him there and after his order was given, to do something. I did not do anything. I didn't think they would do anything while that man was there."

Appellee, according to his testimony, had been ordered on his engine for the purpose of watering the same. McManaman knew that appellee had been on said engine, as he had ordered him to throw aside the spout when the engines were being moved to the siding. The foregoing facts, in connection with the known inexperience of appellee, warranted the jury in finding that appellant was negligence in the operation of said engines, and that such negligence was the proximate cause of appellee's injury.

It may also be observed that it has frequently been held that, where on practically the same facts two juries have returned similar verdicts, which have been approved by the trial judge, courts of review will be extremely reluctant to interfere with the same. *Wood v. Hildreth,* 73 Ill. 525–526; *Nevius v. Gourley,* 97 Ill. 365–370; *Upthegrove v. Chicago G. W. R. Co.,* 168 Ill. App. 89–91; *Gill v. Gill,* 197 Ill. App. 211–213.

It is the contention of appellant that because the work of coaling said engines was controlled by the men at the chute, appellant was not liable for their negligence. What we have already said sufficiently disposes of this contention.

It is also insisted by appellant that appellee assumed the risk of his employment, and that by reason

thereof he cannot recover. The defense of assumed risk is an affirmative defense, and the burden of proving such defense was on appellant. *Seaboard Air Line Railway v. Moore*, 228 U. S. 433; *Central Vermont Ry. Co. v. White*, 238 U. S. 507; *Fisher v. Chicago, R. I. & P. R. Co.*, 290 Ill. 49–56. The testimony on the part of appellee is to the effect that no warning, by the ringing of a bell or otherwise, was given prior to the movement of the engine which resulted in his injury. The evidence on the part of appellant was to the effect that the bell was rung. It was therefore a question for the jury as to whether said bell was rung or other warning given. If no warning was given, the jury were warranted in finding that appellant was negligent as charged.

Appellee was inexperienced, and that fact was known to his foreman, who had given him orders to accompany his engine for the taking of coal and water. The evidence also warranted the jury in finding that appellee's position on said engine, just prior to its being moved, was known, or by the exercise of ordinary care, would have been known to those in charge.

In *Waiswila v. Illinois Cent. R. Co.*, 220 Ill. App. 113, the court at page 118 said:

"The important questions of fact as to the existence of a custom to ring the bell of an engine before starting, and the violation of this custom upon the particular instance in question, were properly submitted to the jury. . . . Failure of the master to give the customary warning to his servant when in a position of danger is negligence. *Sturm v. Consolidated Coal Co.*, 248 Ill. 20; *Doering v. Peoria & P. Union Ry. Co.*, 196 Ill. App. 129; *Chicago, R. I. & P. Ry. Co. v. Rathneau*, 225 Ill. 278; *Pennsylvania Co. v. Stoelke*, 104 Ill. 201. Failure to give warning under somewhat similar circumstances has been held to be negligence under the Federal Employers' Liability Act. *Central R. Co. of New Jersey v. Colasurdo*, 192 Fed. 901;

*Evans v. Detroit, G. H. & M. R. Co.*, 181 Mich. 413; *Bombolis v. Minneapolis & St. L. R. Co.*, 128 Minn. 112. . . .

"We cannot assent to the contention that Waiswila assumed the risk. It is undoubtedly true that work of this kind is dangerous and that he assumed the risks of the extraordinary dangers incident to this kind of work (*Boldt v. Pennsylvania R. Co.*, 245 U. S. 441, 19 N. C. C. A. 461), but he did not assume the risk of an unexpected negligent departure from the customary method of doing this dangerous work. The correct distinction is stated in *Chesapeake & O. Ry. Co. v. Proffitt*, 241 U. S. 462, as follows:

" 'Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable not to the method but to negligence in pursuing it.'

"To the same effect are *Devine v. Chicago, R. I. & P. Ry. Co.*, 266 Ill. 248, affirmed in 239 U. S. 52; *Lancette v. Great Northern Ry. Co.*, 140 Minn. 488; *Kenney v. Seaboard Air Line Ry. Co.*, 165 N. C. 99, affirmed in 240 U. S. 489; *Chesapeake & O. Ry. Co. v. De Atley*, 241 U. S. 310; *Bassham v. Chicago, I. & L. Ry. Co.*, 214 Ill. App. 74. These were cases under the Federal Employers' Liability Act."

Appellant's Rule 30 provided: "The engine bell must be rung when the engine is about to move, and while approaching and passing public crossings at grade."

Under the foregoing authorities, the jury were warranted in finding against appellant under its plea of assumed risk.

It is also insisted that appellee was negligent, and that his negligence was the sole cause of his injury. Even if it be conceded that appellee was negligent, he would not be barred of a right of recovery thereby unless it can be said that his negligence was the sole

cause of his injury. We hold that the verdict of the jury on that question was not against the manifest weight of the evidence.

It is next insisted that the court erred in admitting in evidence rules 7 and 30 of appellant company, which are as follows:

"7. Definitions. Train. An engine or motor or more than one engine or motor coupled with or without cars displaying markers.

"30. The engine bell must be rung when the engine is about to move and while approaching and passing public crossings at grade." It is urged that these rules were not applicable to the situation here involved. This point is not well taken, and the court did not err in admitting said rules.

Other objections were urged to the rulings of the court on the evidence. We have searched the record in connection with the grounds urged against such rulings. While some of them were subject to criticism, no substantial error was committed, and we would not be warranted in reversing the judgment for the rulings on the evidence.

It is next insisted that the court erred in giving the fourteenth, fifteenth and twenty-fourth instructions given on behalf of appellee. The complaint as to instruction 14 is in reference to the language therein: "or in work so closely related to such commerce as to be practically a part of it," and in instruction 15 to the words: "or in work so closely related to it as to be substantially a part of such commerce." The complaint as to instruction 24 is as to the words: "engaged in performing a service for the defendant which was reasonably necessary in aid and furtherance of interstate commerce and so closely related thereto as to be substantially or practically a part of such commerce."

The court did not err in giving these instructions. *Chicago & Alton R. Co. v. Industrial Commission,* 288 Ill. 603, 608–610; *New York C. & H. R. R. Co. v. Carr,* 238 U. S. 260–264; *Industrial Accident Comm. v. Davis,* 259 U. S. 182–187; *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556. It might also be observed that given instructions 15 and 71 on behalf of appellant contain language of the same character.

Appellant also complains of the court's refusal to give 18 instructions tendered by it. Appellant submitted 46 instructions, 19 of which were given. Many of said refused instructions were abstract in form, many were argumentative, and many of them did not state correct principles of law. So far as correct principles were stated in the refused instructions, they were contained in appellant's given instructions. The instructions given on behalf of appellant submitted to the jury its case in as favorable a light as the record warranted.

Where a party offers two or more instructions, embodying the same proposition in varying language, he will not be heard to complain because the court refused the one the party considers the most important, where the others are given. *City of Evanston v. Richards,* 224 Ill. 444–448; *Clifford v. Pioneer Fire-Proofing Co.,* 232 Ill. 150–157; *Swalm v. City of Joliet,* 219 Ill. App. 123–128; *Paden v. Rockford Palace Furniture Co.,* 220 Ill. App. 534–545.

It is next insisted that counsel for appellee in his opening argument misstated the testimony of the witness McManaman. This he concedes, but states that it was innocently done. The statement complained of was that McManaman testified that "the engines were moved suddenly toward the north, without bell or warning." This was objected to by Mr. Wilcox, representing appellant, who stated: "The foreman, Mc-

Manaman, did not testify that the movement was made without the ringing of the bell.'' The court stated: ''I don't remember that he did.'' Thereupon, counsel for appellee stated: ''Well, I remember he did. I positively remember that he did. He was asked if the bell was rung or any warning given, and he said no.'' The court: ''If that is your recollection——'' Mr. Ryan: ''It is not only my recollection, but it is the evidence in the case. I am not responsible for counsel's lack of memory. I will trust to the recollection of you men of the jury, and I reiterate that McManaman positively testified that he heard no bell rung.'' This statement was objected to, and the objection was overruled by the court.

While counsel for appellee should have been more careful in the statement of his recollection of the testimony, we would not be warranted in reversing the judgment on account of such remarks, for the reason as stated, counsel for appellee was merely stating his recollection of the testimony, and it is finally for the jury to say what has been testified to, as well as the weight to be given the same. The court therefore did not err in refusing to grant a new trial on account of the remarks of counsel.

Lastly it is insisted that the verdict of the jury is excessive.

The injuries to appellee are concededly serious. At the time of the accident appellee was 22 years of age. He left school while in the seventh grade, and had never held a clerical position of any kind. While in the employ of appellant he received $130 per month. Following his injury he was taken to a hospital and an attempt was made to set his leg. About two weeks thereafter the leg was amputated about 10 inches below the hip bone. Subsequently some 25 to 30 lancing operations were performed, and for several months appellee suffered severe pain. Some five months after

the accident the leg become swollen and the stub was again lanced. Thereafter a second operation was performed, which left a stump of about five or five and one-half inches. The testimony tends to show that appellee has never been able to wear an artificial limb. Since the injury he has been able to earn from $12 to $17.50 per week. He was in good health before the injury, weighing about 185 pounds. Since the accident he has lost weight and his general health has not been good.

"In this character of case the damages are for the determination of the jury, and unless we are able to say that the verdict is so excessive as to indicate that the jury were moved by prejudice or passion, we would not be warranted in reversing the judgment on the ground that the verdict is excessive. *Posch v. Chicago Rys. Co.*, 221 Ill. App. 241–255; *Kavale v. Morton Salt Co.*, 242 Ill. App. 205–215; *Dunn v. Chicago, R. I. & P. Ry. Co.*, 248 Ill. App. 26–33; *Maskaliunas v. Chicago & W. I. R. Co.*, 235 Ill. App. 198–221." This we are unable to do.

In connection with the argument that the verdict of the jury was excessive, counsel for appellant insist that the court erred in giving appellee's instruction No. 35. This instruction, among other things, states:

"The court instructs the jury that . . . in assessing the plaintiff's damages, if any, the jury should take into consideration . . . any loss of health or strength, if any, which the jury may believe from the evidence the plaintiff has sustained or will sustain as a direct result and consequence of such injury, if any; also the value of the plaintiff's time lost, if any, by reason of such injury, and his ability, if any, to work and earn money in the future, so far as any of the above-mentioned elements of damages, if any, have been charged in the plaintiff's declaration and shown by a preponderance of the evidence."

It is first insisted that the court erred in telling the jury that they might assess damages to plaintiff for any ''loss of health or strength, so far as shown by the evidence.'' While it is conceded that appellee testified that the condition of his health had not been good since the accident, it is insisted that he was not corroborated by the other evidence. The weight of the evidence was for the jury, and this point is not well taken.

It is also contended that said instruction was erroneous in failing to limit the loss of future earnings to their present value. Instruction No. 32, given on behalf of appellant, is as follows:

''If you should come to the assessment of damages in this case, you can only allow plaintiff on account of loss of earning power, the present cash value of such loss of earning power.''

The instructions are to be taken as a series. Appellee's instruction No. 35 did not direct a verdict, and, taken in connection with appellant's instruction 32, correctly informed the jury that the future earnings of appellee must be determined on their present cash value. This holding is supported by the decision in *Louisville & N. R. Co. v. Holloway,* 246 U. S. 525. We would not be warranted in reversing the judgment for the giving of said instruction.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*