(No. 12305.—Judgment affirmed.)

MARY WANGEROW, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD *et al.*—(THE CHICAGO JUNCTION RAILWAY COMPANY, Defendant in Error.)

*Opinion filed December 18, 1918—Rehearing denied Feb. 13, 1919.*

1. WORKMEN'S COMPENSATION—*Compensation act does not apply if an employee was engaged in inter-State commerce.* If the injury to an employee of a railroad company occurs while he is engaged in an inter-State commerce movement the liability of the employer is governed by the Federal Employers' Liability act and not by the Illinois Workmen's Compensation act.

2. SAME—*when injury occurs in inter-State commerce movement.* An injury to a member of a switching crew caused by falling from the engine as it was running light from one part of the

yards to another is received while he was engaged in an inter-State commerce movement, where the engine had just moved a string of cars, some of which were inter-State cars and was on its direct way to get another string of cars also containing inter-State cars.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

JAMES C. McSHANE, for plaintiff in error.

WINSTON, STRAWN & SHAW, (JOHN D. BLACK, and GEORGE A. KELLY, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes to this court by writ of error to review the judgment entered by the circuit court of Cook county affirming a finding of the Industrial Board of Illinois and quashing a writ of *certiorari* directed to that board to review its decision denying an award to the plaintiff in error under the Workmen's Compensation act of Illinois. The trial judge certified that the case was one proper to be reviewed by this court.

The Industrial Board found, and it is admitted, that the defendant in error, the Chicago Junction Railway Company, and the deceased, William Wangerow, were operating under the Workmen's Compensation act and that the injuries of the deceased causing his death arose out of and in the course of his employment. The deceased lived with the plaintiff in error, who is his widow and to whose support he contributed. Compensation was denied by the Industrial Board and the circuit court on the ground that the defendant in error and the deceased were at the time of the injury engaged in inter-State commerce, and for that reason the rights and interests of the parties are governed by the Federal Employers' Liability act and not by the Workmen's Compensation act of Illinois.

The Chicago Junction Railway Company operates a railroad situated entirely within this State and devoted exclu-

sively to switching cars. Its chief activities are performed at and within the vicinity of the Union Stock Yards, in Chicago. It serves the various packing houses and other industries in that vicinity, employing from thirty to thirty-five switch engines and crews in its work. Deceased was a member of one of these crews. For operating purposes the yards are divided into a number of so-called switching districts. Each district has a yardmaster in charge, and over the yardmasters of all the districts there is a general yardmaster. Telephone communications are maintained between the various districts and the general yardmaster's office. The switching districts mentioned by the witnesses and more or less concerned in this case were, first, the Ashland avenue district, which extended from Ashland avenue westward for about a mile and included the Ashland avenue yard; the Horn district, which was situated in the stock yards proper; the Halsted street district, which was situated about one mile east of Ashland avenue; and the so-called State Line district, which was also situated about a mile east of Ashland avenue. All of the switch engines and crews, except three, were engaged in switching or transferring cars between the various switching districts. The three engines and crews referred to were called "roustabout," "shove down" and "pusher" engines and crews. One of these three engines was No. 157, and deceased was one of the switchmen of the crew that worked with this engine. The crew in which the deceased worked commenced their day's work at seven o'clock A. M. While there is conflict in the testimony, it is quite apparent from the evidence in the record that there was a standing general order of the yardmaster to the effect that the crew in which the deceased worked was to go on duty at seven o'clock each morning; that unless they had orders to the contrary their first act was to take a cut of cars from track 20 over to the Horn district; that these cars were ready at seven o'clock each morning; that when this crew made the deliv-

ery from track 20 into the Horn district it brought back on its return trip any cars destined to other parts of the yard, and unless otherwise directed would then go around to the west end of the Ashland avenue yard and come in on track No. 13, where a train for the Halsted street district was usually found ready. This train consisted of cars for the different industries in the Halsted street district. There was a general order to next move this train to the Halsted street district, cutting off from them at Laurel street. This was the regular daily work of this crew unless otherwise ordered by the yardmaster. After returning from the Halsted street district the next work of this crew was to take another train from track 14 or 17 to the State Line district, distributing them in that district. The switching, as above indicated, usually took the entire time of the crew until about eleven o'clock in the morning, after which the crew went back to the Ashland avenue yard and worked the balance of the day under special orders. On the morning of the accident this crew started to work as usual at seven o'clock A. M. and their first act of switching was to shove a train out of track 20 and into the Horn district. At the direction of the yardmaster in the Horn district the engine on which this crew worked was cut off and returned to the Ashland avenue yard, where the crew got another train from track 13 for the Halsted street district, which they took as far as Laurel street. This train, which we will refer to as the Laurel street train, was left at Laurel street as a part of the regular morning work and not in compliance with any special directions from the yardmaster. Upon cutting loose from the Laurel street train this engine and crew started back to the Ashland avenue yard to get another train to take to the State Line district. This train we will, as a matter of convenience, refer to as the State Line train. This was also a part of the regular morning work of this crew. The accident occurred while this en-

gine and crew were returning, after setting the Laurel street train, to the Ashland avenue yard for the purpose of moving the State Line train. After the accident this engine and crew proceeded to the Ashland avenue yard, took the State Line train and moved it as far as Laurel street on a track used for moving the State Line train. While returning from setting the Laurel street train this engine, without cars attached, stopped at a water tank and took water, and thereafter, on the way to the Ashland avenue yard, deceased fell from the foot-board on the front of the engine while going over the cross-over tracks and the engine passed over one of his limbs, inflicting the injuries from which he died. The course taken from the Halsted street district, in which the Laurel street train was left, to Ashland avenue on this occasion was the one usually followed in this work.

It is stipulated in the record that on the morning of the accident the train of cars herein referred to as the Laurel street train had in it freight cars which were moving in inter-State shipment, and that the train herein referred to as the State Line train also had in it freight cars which were moving in inter-State shipment and loaded with inter-State commerce.

It is contended by the plaintiff in error that the deceased was engaged in a succession of separate tasks and was not connected with inter-State commerce except at such times as the crew with which deceased worked was in actual contact with a drag of cars in which there was inter-State commerce or a car moving in inter-State shipment; that, even admitting that there was a general plan or order of work for the crew with which the deceased worked from seven o'clock to eleven o'clock A. M. of each day, nevertheless its work was properly to be regarded as a succession of separate tasks and in no way connected with inter-State commerce, except when the crew moved a drag of cars in which there was inter-State commerce or a car moving in

inter-State shipment. It is contended by the defendant in error, the Chicago Junction Railway Company, that the crew in which the deceased worked was engaged in a regular, systematic routine of work; that the series of acts making up the whole of this work from seven o'clock to eleven o'clock A. M. was properly to be regarded as a single and individual task and not as a succession of separate tasks; that even if it be held that the series of acts making up this work are properly to be regarded as a succession of separate tasks, the particular act in which the deceased was engaged at the time of the injury was a necessary incident to and a part of the work connected with inter-State commerce or the moving of cars in inter-State shipment.

The question to be decided is whether the Workmen's Compensation act of Illinois or the Federal Employers' Liability act applies. If Wangerow was engaged in inter-State commerce at the time of his injury then the Federal act applies and there is no liability under the Illinois Workmen's Compensation act. *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528; *Staley* v. *Illinois Central Railroad Co.* 268 id. 356.

The test whether recovery in any case is governed by the State or the Federal act, as established by this court ·and by the Federal courts, is, is the work in which the employee was engaged at the time of the injury a part of inter-State or intra-State commerce. That the employee expected, upon the completion of the task at which he was engaged when injured, to engage in another which would have been inter-State or intra-State is immaterial, as the test is the nature of the work done at the time of the injury. (*Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board, supra; Illinois Central Railroad Co.* v. *Behrens,* 233 U. S. 473; *Erie Railroad Co.* v. *Welsh,* 242 id. 303; *Louisville and Nashville Railroad Co.* v. *Parker,* 242 id. 13.) Whether the work done is inter-State or intra-

State depends upon the immediate purpose for which such work is done. In the case of *Louisville and Nashville Railroad Co.* v. *Parker, supra,* a railroad fireman on a switching engine was killed in a collision while his engine was transferring an empty freight car from one switch track to another. The car was not being moved in inter-State commerce, but the purpose of moving the car, and the only purpose, was to enable the crew to reach and move an inter-State car. The fireman was held to be engaged in inter-State commerce at the time of the accident, the court there saying: "If this movement [of an empty freight car] was simply for the purpose of moving and reaching an inter-State car the purpose would control and the business would be inter-State." In the case at bar the crew of which Wangerow was a member was at the time of the accident moving the engine, with no cars attached, from the work of setting the Laurel street train, containing inter-State cars, back toward Ashland avenue for the purpose of there moving the State Line train, also containing inter-State cars. In each case the moving of these trains was an act of inter-State commerce, and in doing that work Wangerow was engaged in inter-State commerce. The only purpose in crossing over the tracks where the injury occurred was to move the engine from the point of completion of one act of inter-State commerce to the point of commencement of another act of inter-State commerce. That purpose controls, and Wangerow was engaged in inter-State commerce at the time of the injury. This being true, the Workmen's Compensation act of Illinois did not apply.

The judgment of the circuit court affirming the order of the Industrial Board and quashing the writ of *certiorari* will be affirmed.    *Judgment affirmed.*