### DAVIS, Agent, v. DOWLING.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1922.)

No. 3695.

1. **Master and servant ⬥289(35)—Switchmen's contributory negligence in violating rule held for jury.**

That a switchman may have been negligent in failing, as required by a rule of the company, to inspect a defective brake, in using which he was injured, does not as matter of law establish that his negligence was more than contributory, which does not bar recovery under Employers' Liability Act April 22, 1908, § 3 (Comp. St. § 8659).

2. **Commerce ⬥27(7)—Switchman held "employed in interstate commerce" when injured.**

A switchman, injured while helping to break up a cut of cars, containing both interstate and intrastate cars, *held* to have been "employed in interstate commerce," within Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), though the particular car he was riding when injured was in intrastate use.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by M. L. Dowling against James C. Davis, Federal Agent under Transportation Act (41 Stat. 456). Judgment for plaintiff, and defendant brings error. Affirmed.

L. D. Smith, of Knoxville, Tenn. (L. D. Smith, of Knoxville, Tenn., on the brief), for plaintiff in error.

H. N. Cate, of Knoxville, Tenn. (Fred C. Houk and H. N. Cate, both of Knoxville, Tenn., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (plaintiff below) while foreman of a switching crew in the Southern Railway yards at Knoxville, Tenn., was thrown from a car which he was riding in the course of a switching movement, through a defect in the brakes upon

---

that car. He recovered under the Federal Employers' Liability Act (Comp. St. §§ 8657–8665), against defenses: First, that he was not engaged in interstate commerce at the time of his injury; and, second, that his negligence in failing to inspect the brakes was the sole cause of the injury. A motion to direct verdict was overruled and the cause submitted to the jury. There were verdict and judgment for plaintiff. The charge was not sent up, apparently because neither party criticized it. The errors argued are addressed to the refusal to direct verdict for defendant. Upon this review we, of course, must consider the testimony in its aspect most favorable to plaintiff.

There was substantial evidence, not only of the existence of a defect in the brakes, but of the negligence of defendant's inspectors in failing to discover it. In connection with the accident, plaintiff found that the brake did not work properly, and, following the accident, both plaintiff and his associate found the brake in a defective condition, and testified what the defect was. The question of defendant's negligence was not foreclosed by the fact that three representatives of the company testified to an examination and testing of the brake after and with knowledge of the accident, and having that in mind, and that two of the three testified that they found nothing wrong with it—the third that one of the others operated the brake in his presence and found it in good shape.

[1] Upon the evidence it was open to the jury to find that defendant's inspectors had failed in their duty of inspection. At the most, therefore, plaintiff was in that respect guilty only of contributory negligence, which, under the federal act, operated merely to mitigate damages. The fact that a rule of the defendant company required inspection by the switchmen did not, as matter of law, operate to the contrary, for that rule did not necessarily make the negligence solely that of plaintiff. There is undisputed evidence that the rule in question was daily disregarded, and in the presence of and with the knowledge of the yardmaster.

[2] At the time of the accident the switching crew was handling a cut of several cars which had been hauled from the Knoxville yards to the Coster yards, a distance of about two miles; and was engaged in placing the cars in position with a view to their inclusion in the proper trains. Plaintiff, as a member of this switching crew, handled daily and indiscriminately both interstate and intrastate cars, and had on the day in question switched cars in interstate commerce, which class (there was testimony) would usually run about 75 per cent. of those switched. All the freight cars in the cut in question were destined for intrastate use. The caboose, however, was destined for interstate use. The testimony was that the caboose had been for 20 days engaged in an interstate run between Knoxville and Bristol, Va.; that cabooses were regularly assigned to given conductors, each regular conductor having a regular caboose. The conductor to whom this caboose was assigned had the interstate run in question; the caboose had come in that day from Bristol; it was to return to Bristol on the next morning (following the night of the accident), and did so, and with the same conductor who brought it in on the previous run,—he

taking the place of the regular conductor. In this situation, the suggestion that the train dispatcher had the right to send any particular car on any particular train he might wish is not specially pertinent. The caboose was next to the engine. After all the cars but the one next to the caboose had been placed (temporarily or otherwise), plaintiff detached the remaining car from the caboose and proceeded to ride it down the grade. While so riding it, and while it was detached from the caboose, the injury occurred. The trial judge held that if the riding on the freight car was incident merely to the placing of the caboose (which was in interstate commerce), the movement of the intrastate freight car was nevertheless an interstate movement.

The question whether employment under the federal act is or is not interstate commerce has been treated under a great variety of conditions, with the result that, as declared by the Supreme Court, each case depends largely upon its own circumstances. That the caboose itself was in interstate commerce is, in our opinion, clear. The true test is whether the work in which plaintiff was engaged was a part of the interstate commerce in which the carrier was engaged. Law v. Illinois Central R. R. Co. (C. C. A. 6) 208 Fed. 869, 126 C. C. A. 27, L. R. A. 1915C, 550. If plaintiff was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it, the federal act applies. Industrial Accident Commission v. Payne (decided May 29, 1922) 258 U. S. ——, 42 Sup. Ct. 489, 66 L. Ed. ——. The following authorities, in our opinion, sustain the conclusion of the interstate nature of plaintiff's employment: Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1916B, 662, where it was held that in leaving the yard after his day's work in switching intrastate and interstate commerce, the employee is engaged in interstate commerce; Erie R. R. Co. v. Szary, 253 U. S. 86, 40 Sup. Ct. 454, 64 L. Ed. 794, where it was held that a railway employee, engaged in both interstate and intrastate commerce, whose duty it was to dry sand in stoves near the tracks and supply it to locomotives, whether operating in intrastate or interstate commerce, injured while returning from an ashpit where he had gone to dump ashes taken from one of the stoves, was employed in interstate commerce; Philadelphia, etc., R. R. Co. v. Di Donato, 256 U. S. 327, 41 Sup. Ct. 516, 65 L. Ed. 955, where it was held that a watchman employed on an interstate railroad at a public grade crossing, to signal both interstate and intrastate trains and guard the tracks against disorder and obstruction, is employed in interstate commerce, irrespective of the interstate or intrastate character of the particular train he may be flagging when injured. Neither Railroad Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, nor Railroad Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, is in conflict with the view we have expressed. In the Winters Case, 242 U. S. at pages 356, 357, 37 Sup. Ct. at page 171 (61 L. Ed. 358, Ann. Cas. 1918B, 54), the injuries were sustained while plaintiff was repairing an engine which, as said by the court, "was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had

not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either." In the Behrens Case the pertinent point decided was that an employee of a carrier engaged in interstate commerce by railroad, who is engaged on a switch engine in moving several cars, all loaded with intrastate freight, from one point in a city to another point in the same city, is not engaged in interstate commerce, and an injury thus sustained is not within the Federal Employers' Liability Act.

In the instant case plaintiff, who was regularly engaged in both intrastate and interstate transportation, was breaking up a train of cars containing an interstate car, all of which cars had been moved as a unit from one yard to the other; the unitary character of this cut, under the circumstances, makes it, in our opinion, impossible to say that plaintiff's employment had ceased its interstate character from the mere fact that at the instant of the injury he was engaged in switching an intrastate car, as preliminary only to the final disposition of the interstate car. We think this situation existed whether or not the movement of the intrastate car be regarded as merely incidental to the movement of the interstate car. The fact remains that the general movement, viz. the breaking up of the cut of cars, which partook both of interstate and intrastate character (and thus gave a certain interstate quality to the cut), had not been completed, but was still in progress. To say the least, the riding of the freight car was so closely related to interstate commerce as to be practically a part of it. There was thus no error in refusing to direct verdict for defendant. The denial of motion for new trial, assigned as error but not argued, calls for no discussion.

The judgment of the District Court is affirmed.