Before STATE INDUSTRIAL BOARD, Respondent.

CATHERINE GEHAN, Claimant, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Third Department, May 16, 1923.

Workmen's compensation — interstate commerce — yard brakeman of railroad killed while coupling empty cars — part of cars were on way from points in Pennsylvania to East Buffalo — not shown that empty interstate cars might have been used in intrastate traffic — employee was engaged in interstate commerce.

A yard brakeman who was killed while coupling empty cars to make up a train to be hauled from a point within this State to East Buffalo is engaged in interstate commerce, where it appears that some of the empty cars of which the train was composed were on their way from points in Pennsylvania to East Buffalo; that said interstate cars went forward to their destination in the train which was being made up at the time of the accident; and that it was not shown whether or not the interstate cars could have been used as desired for local intrastate shipments.

KILEY, J., dissents, with opinion.

APPEAL by the defendant, The New York Central Railroad Company, from an award of the State Industrial Board, made on the 14th day of July, 1922.

*Visscher, Whalen, Loucks & Murphy [Robert E. Whalen* of counsel], for the appellant.

*Carl Sherman, Attorney-General [Edson W. Hamm* and *E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, Acting P. J.:

The claimant's husband was employed by the New York Central Railroad Company as a yard brakeman. He received an injury from which he died while at work in the railroad yards of his employer at Thompson Station, about two miles south of Lyons, N. Y. He was at the time engaged in coupling empty cars to make up a train to be hauled from Thompson Station to Lyons. Eight of the cars which were to form the train had arrived at Thompson Station from Newberry Junction, Penn., some two weeks previously. They had made the journey in two train runs. The first run was from Newberry Junction, Penn., to Corning, N. Y., and the second run was from Corning, N. Y., to Thompson Station, N. Y. The conductor upon the first run testified that their destination was East Buffalo, N. Y., and that he got this information " off the running slip." The conductor on the second run testified that their destination was East Buffalo, N. Y., and that he got this information " from the way bill " which accompanied the cars. The yardmaster at Lyons, who with the help of the claimant's husband, placed the cars in the train for Lyons, N. Y., testified that " running slips " accompanied each of the cars; that these " running slips " were in his charge for the time being; that they showed that the cars came from Pennsylvania and were destined for East Buffalo, N. Y.; that the cars went " forward to their destination " as intended. He stated that a running slip " is a card showing where a car originates and its destination, also the movement of the car for the information of the conductor." The train pulled out with the eight cars for Lyons, N. Y., and it is not disputed that the journey thus begun was taken in furtherance of getting them to destination at East Buffalo, N. Y. The yardmaster stated that he " sent them on to East Buffalo." The " running slips " or the " way bill " which accompanied the cars evidently constituted directions to various train hands and car handlers to convey the cars in question from Newberry Junction, Penn., to East Buffalo, N. Y. If it was consonant with these directions that the cars while intermediate the two interstate points might be used as desired for local intrastate shipments, that fact was not proven. As the evidence stands the cars were making one

continuous interstate trip from Newberry Junction, Penn., to East Buffalo, N. Y., and their stop at Thompson Station was a mere interruption in such a journey. Therefore, the claimant's husband was engaged in interstate commerce when making up the train at Thompson Station and the claimant was not entitled to an award of death benefits for his death which was then occasioned. (*Kinsella* v. *New York Central R. R. Co.*, 186 App. Div. 856.)

The award should be reversed and the claim remitted to the State Industrial Board.

VAN KIRK, HINMAN and HASBROUCK, JJ., concur; KILEY, J., dissents, with an opinion.

KILEY, J. (dissenting):

Claimant's intestate was a yard brakeman in the employ of the appellant railroad company in its yards at Thompson Station near Lyons, N. Y. On July 19, 1921, at about five-thirty P. M., he fell from the top of a car which ran over him. The injuries were fatal. The claimant, his widow, was awarded compensation. The appeal from such award raises a single question, viz., that the decedent was engaged in interstate commerce at the time he received his injury, and that, therefore, the award was improper. The yardmaster was assembling cars that were in the yard at Thompson Station preparatory to forwarding them to their destination at East Buffalo, N. Y. The deceased was assisting in the work. These cars came from different parts of the State of Pennsylvania; some of them had laid at different stations in this State from one, two or three to fifteen days before they reached Thompson Station. There was a running slip for each car, described as a "card showing where a car originates and its destination, also the movement of the car for the information of the conductor." To recapitulate, these cars had and were being called in from different points until a large number were gathered at Thompson Station. They belonged to the New York Central, were automobile cars, and were destined for the home port at East Buffalo. They were not routed for any other point; that was their destination. The deceased was aiding in the work as aforesaid. The appellant urges that the circumstances shown constituted interstate service. In *North Carolina R. R. Co.* v. *Zachary* (232 U. S. 248) a locomotive fireman was killed. He had prepared his engine for the trip; cars, both State and interstate, which were to make up his train, were not yet attached to the locomotive. He was injured by a passing train; held to be interstate commerce even if the cars were empty, when hauling from one State to another. In *Hester* v. *East Tennessee & W. N. C. R. Co.* (254 Fed. Rep. 787) a

train of empty hopper cars used in interstate commerce were being moved from one place in the State to another for loading, brakeman killed; held to be interstate commerce. In *Great Northern Railway* v. *Otos* (239 U. S. 349), an action under the Safety Appliance Act,* there was a defective coupler; switch foreman injured in trying to couple a car loaded for a point outside of State, car had to be removed from train for repairs before it could proceed; held it was not withdrawn from interstate service. In *Cott* v. *Erie R. R. Co.* (231 N. Y. 67) a conductor in the service of the Lehigh Valley railroad was killed. He was working with his engine on a common terminal of the Lehigh and Erie at Buffalo. There were three carloads of beef which he took from the Buffalo Cold Storage plant, which was connected with the terminal, to deliver them to the New York Central railroad; they were destined for Montreal, Can. His engine, while moving along the terminal tracks, was derailed, and he was thrown to the ground and killed. Held interstate service. In *Kinsella* v. *New York Central R. R. Co.* (186 App. Div. 856) the deceased was injured while cleaning a car standing in the freight yard at Canandaigua, N. Y. This car had been billed for its home port outside this State, and was so going directly, except for the interruption of the journey as aforesaid. It was held that deceased at time of injury was engaged in interstate commerce. On the other hand, in *Wesp* v. *N. Y. C. R. R. Co.* (201 App. Div. 865) deceased was one of the yard gang in defendant's yards at Buffalo. They were moving cars into the classification yard. In the train he was working with were two gondola cars, which were destined for the home road outside of the State. They might go direct or might be used for work in other directions before they got to the home port. Workman while so working was struck by a passing car. Held not interstate commerce. In *Pennsylvania R. Co.* v. *Knox* (218 Fed. Rep. 748) empty cars moving from different points in New York to the Pennsylvania Railroad Company in Pennsylvania, which owned them, and to be used from the home road as needed. None of the cars moved forward on cards or on bill of lading stating their destination. Held that interstate commerce ended at the first halting place in Pennsylvania. The court said further: " They had no more distant destination; they did not leave New York with any other terminus in view; they were then immediately available for any use; in a word * * * they were ' drifting ' waiting to be assigned for service * * * they were in the owner's possession and he was in full control. * * * They did not need to go further in order to be ' at home.' " In *Delaware, L. & W. R. R.* v. *Yurkonis* (238 U. S. 439) the injured

---

* 27 U. S. Stat. at Large, 531, chap. 196, as amd.— [REP.

party was a miner in company's mines; he prepared coal for use in its locomotives and engines used in interstate commerce. Held he was not engaged in interstate commerce. In *Shanks* v. *D., L. & W. Railroad* (239 U. S. 556) the company maintained a machine shop for the repair of its locomotives used in both State and interstate commerce. Plaintiff was injured while taking down and putting up fixtures. Held not engaged in interstate commerce. In *Chicago, Burlington & Quincy R. R.* v. *Wright* (241 U. S. 177) employee injured while removing coal from storage tracks to coal chutes. Coal brought from outside State and used in interstate commerce. Held not engaged in interstate commerce. In *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353) claimant sustained injuries while repairing an engine that had been used in interstate commerce and was thereafter so used; the evidence did not show that the locomotive " was permanently or specially devoted to such commerce or assigned to it at the time." Held not within the Federal Employers' Liability Act.* In *McCluskey* v. *Marysville & Northern R. Co.* (243 U. S. 36) deceased was injured while unloading logs from a railroad train at tide water, to be towed (some of them) to defendant's mill, worked up and the product sold intra and interstate. Held not within the Federal act. In *Barlow* v. *Lehigh Valley R. R. Co.* (158 App. Div. 768; affd., 214 N. Y. 116) plaintiff was employed by defendant as an engineer in both intra and interstate commerce. In the Court of Appeals it was said: " At the time of, or just before the accident, his crew were, or had been, engaged in placing three cars of supply coal upon a trestle where the coal was to be dumped into pockets, from which it was to be taken indiscriminately to coal engines employed in interstate or intrastate commerce. The three cars of coal had been transported over the defendant's own road from Sayre, Pa., to Cortland [N. Y.], and had arrived at the Cortland yards and been placed on sidings at different times a few days before they were placed on the trestle." The plaintiff was injured while reaching under his engine to examine a brake beam, the fireman starting the engine suddenly. It was held, sustaining the judgments of the lower courts, that the engineer was engaged in interstate commerce. That case was taken to the United States Supreme Court. (244 U. S. 183.) The judgments were reversed, holding the claimant was not covered by the Federal act. In this case the conductor testified that he picked up all those cars (meaning eight of about one hundred) at Newberry Junction, Penn., and that their destination was East Buffalo, but the " consist report " in evidence does not bear out this statement. That shows they were

---

* 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143.— [REP.

billed from Lyons near Thompson Station to Gardenville near East Buffalo.  This sheet confirms the evidence of the yardmaster above quoted that he had the card routing the cars to East Buffalo and that one of its purposes was for the information of the conductor.  Casting up the holdings hereinbefore referred to, I think it should be held that claimant's intestate was not engaged in interstate commerce.  Aside from that, however, it was a fair inference that the State Industrial Board, could draw from the facts in the record, that these cars, when they started from Pennsylvania were destined for Lyons or Thompson Station to be placed in a train there as needed, and routed from that point.  As was said in one of the cases above cited, they had reached home, they were in the possession and under the control of the owner and had not been redestined for any foreign port.

The award should be affirmed, with costs in favor of the State Industrial Board.

Award reversed, with costs against the State Industrial Board, and matter remitted to the State Industrial Board for further proof.