**Leo Benson, Appellee, v. The Chicago, Rock Island and Pacific Railway Company, Appellant.**

**Gen. No. 8,491.**

Opinion filed June 7, 1932. Rehearing denied July 23, 1932.

MILLER, ELLIOTT & WESTERVELT, for appellant; EUGENE R. JOHNSON, of counsel.

JOHN E. CASSIDY, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

Leo Benson, appellee, had been an employee of the Chicago, Rock Island & Pacific Railway Company for a period of nine or ten years. All of that time he was employed as a switchman and had the ordinary duties of a switchman to perform. On the 17th day of August, 1929, while employed as such switchman for said railway company he was injured by a train of the defendant. He brought suit in the circuit court of Peoria county alleging that his injuries were caused by the negligence of the defendant company. The case was tried before a jury which returned a verdict in favor of the plaintiff in the sum of $32,500. Judgment was entered on the verdict and the case is brought to this court for review. The declaration consists of two counts, each of which charges that on August 17, 1929,

plaintiff and defendant were employee and employer respectively, and engaged in interstate transportation or commerce by rail and that plaintiff was employed in defendant's railroad yards in Peoria as a member of the train crew.

The first count especially charges that plaintiff was engaged in switching a certain cut of railway cars in the work of interstate commerce; that while he was so engaged he was injured because of the negligence of the defendant in permitting a strand of wire to be attached to a handhold of one of the cars in the switching cut, which made it unsafe for the employees; that when the plaintiff was in the act of securing himself and his personal safety by grasping said handhold his glove became entangled in said wire, as a result of which he was pulled or dragged some distance, after which he was struck by another freight car which was then in the same switching operation, etc. This count charges that as a result plaintiff was injured in certain respects recited therein.

The second count is a charge of general negligence. It avers that at the time of his injury plaintiff was engaged, as an employee of defendant in interstate commerce, in a certain switching operation and that by reason of carelessness and recklessness of the agents and servants of defendant, a railway car was propelled against plaintiff with great force, striking him in the back, causing the injuries there recited.

The declaration claimed damages of $50,000.

Defendant's only plea was that of general issue, filed November 8, 1930.

The accident happened about 11 o'clock on the morning of August 17, 1929, while the appellee was engaged in switching some cars from a train consisting of an engine and seven or eight freight cars. The appellee was one of a train crew of four which was in charge of this particular train on which this train crew was working. The appellee was engaged in setting the cars

in places where they were either to be loaded or unloaded and then sent to their particular destination. This train had been made up and moved down into the yard where the cars were taken from the main track and shunted onto a side track. The cars were being pushed by the engine. At the time of the accident to the appellee, he was standing by the side of the track with his face towards the approaching cars. It was his duty to uncouple the first car, or the one farthest from the engine by pulling a coupling pin, and then the foreman standing off from the side of the train would signal the engineer to stop the engine and the other cars, and the car that had been uncoupled would roll on down the track to its destination. The cars were approaching the appellee at the rate of speed estimated at six to eight miles per hour. As the first car reached the appellee he reached up with his right hand and took hold of the safety device on the side of the car, commonly called the ''grab-iron,'' and with his left hand uncoupled the car from the rest of the train. It was the switchman's custom to always run a short distance beside the car as it was uncoupled so that if there was any slack in the train, the next car to the one that has been uncoupled would not strike the switchman. This the appellee did when he uncoupled the car, but discovered that his hand was caught by his glove on the grab-iron and he could not release himself. He stumbled and was dragged along until his glove was torn loose. He was struck by the next car to the one that he had released and was knocked down and severely injured. After the accident the grab-iron on which his hand had been caught was examined and it was discovered that a piece of number nine fence wire with a hook on the end was wrapped around the grab-iron several times.

The appellee claims that the defendant railroad company was negligent in permitting this wire to be on

this safety device and their negligence caused the plaintiff to be injured.

It is the appellant's contention that the judgment should be reversed for the following reasons: (1) That at the time of the injury the appellee was not engaged in interstate transportation, or work so closely connected therewith as to be substantially a part thereof. (2) That appellant was not guilty of violating the Federal Safety Appliance Act. (3) That appellee assumed the risk of being injured in the manner and by the means disclosed by the record. (4) That the appellee did not prove any negligence on the part of the appellant. (5) That the court erred in not sustaining appellant's motion for a mistrial because of misconduct of appellee and his counsel during the trial of the case. (6) That appellant should have been permitted to ask appellee whether or not he was willing to submit to a physical examination to determine his condition at the time of the trial. (7) That the court erred in refusing to admit in evidence its Exhibit No. 10, and in admitting evidence of appellee over the objection of the appellant. (8) That the verdict and judgment was excessive and the result of passion and prejudice on the part of the jury.

The appellants, in their brief and argument, admit that our Supreme Court in its latest ruling upon the proposition of permitting a defendant in a personal injury case to ask the plaintiff whether or not he will submit to a physical examination to determine his physical condition, has held it to be improper, but mention it merely for the purpose of saving the point for review. Under the rules of this court the point is waived by the appellant and will not be discussed in this opinion.

The appellants have assigned as error the action of the trial court in sustaining the appellee's objection to admitting in evidence defendant's Exhibit No. 10,

which is the written application of the appellee for
employment in appellant's service. The copy of the
application does not show on its face when it was made,
but presumably it was signed in 1920, nine years be-
fore the date of the injury to the appellee. The appel-
lant contends that this exhibit was admissible in evi-
dence for the purpose of comparing the handwriting
of appellee with other handwriting of the appellee on
their exhibits; and also for the purpose of showing
that the appellee had knowledge of the dangerous work
in which he was employed. If this exhibit had been
admitted in evidence we cannot see what advantage it
would have been to the jury in deciding the issue of
fact in this case.

Complaint is also made of the court's refusal to
admit other evidence offered by the appellants, but it
is our opinion the court did not err in refusing to
admit Exhibit No. 10, or other evidence complained of
by the appellants.

During the trial, Mr. P. J. Stack, claim inspector
and adjuster for the appellant, filed an affidavit stat-
ing that he had seen a man by the name of Crutcher
during a recess of court talking to one of the jurors in
the corridor of the courthouse. The affidavit states
that he is informed that Mr. Crutcher is an inves-
tigator for John E. Cassidy, the attorney for appellee
in the case. At the time this affidavit was filed the
appellant made a motion to withdraw a juror in the
case and for the court to direct a mistrial. Out of the
presence and hearing of the jury, Stanley Crutcher,
who appears to be the man mentioned in Stack's
affidavit, was called by the appellee and testified that
he did not talk to any of the jurors. He said he was
talking to another party; that it had nothing whatso-
ever to do with the case on trial. The court, after
hearing the evidence of Mr. Crutcher, overruled the
motion to withdraw the juror and for a mistrial.

The appellants have cited several cases sustaining their contention that the court erred in overruling their motion. An examination of these cases discloses that none of them is similar to the affidavit filed in this case. The only thing that appellants claim in this case is that one inspector saw the other inspector talking to one of the jurors. This is absolutely denied by Mr. Crutcher. The cases cited by appellant are those where the successful party in the suit had done something that tended to influence the jury. In the case of *Vane v. City of Evanston* (150 Ill. 616), cited by the appellants as sustaining their point, the same question arose. The City of Evanston, one of the parties to the suit, had furnished dinner for the entire jury. The appellant claimed that this was reversible error, but the court overruled their contention and in passing on this question say: ''The law will not tolerate the slightest suspicion that the successful litigant has corrupted or improperly influenced the jury, or that the jurors have been, directly or indirectly, tampered with, lest justice be subverted and its administration be brought into contempt. It does not, however, follow, that customary offices of civility, and ordinary hospitality or courtesy, extended by the successful litigant, when not designed or calculated to influence the juror or jurors in their consideration of the case, and which are devoid of suspicion, will afford sufficient ground for setting the verdict aside and awarding a new trial.''

Before the court will be justified in ordering a juror withdrawn and directing a mistrial, there must be some evidence other than mere suspicion that somebody has tampered with the jury. The trial court in this case had an opportunity to observe both Mr. Stack and Mr. Crutcher and he was in a better position than the reviewing court to say which of these parties appeared to be telling the truth. It is our opinion that

there was no error committed in overruling appellant's motion for a mistrial.

This case was tried upon the theory that at the time appellee was injured he was engaged in interstate commerce. The burden of proof that he was so engaged is upon the appellee. The evidence shows that the cut of cars upon which the appellee was working contained cars which had been shipped from other States. One car was being shipped from Peoria to New Jersey. That the appellee was so engaged in interstate commerce at the time of his injury is sustained by the case of *Wangerow v. Industrial Board*, 286 Ill. 441; *Davis v. Dowling*, 284 Fed. 670; *Jeneary v. Chicago & Interurban Traction Co.*, 306 Ill. 392; *Erie R. Co. v. Winfield*, 244 U. S. 170, and *New York C. & H. R. R. Co. v. Carr*, 238 U. S. 260. It is our opinion that at the time of the accident the appellee was engaged in interstate commerce transportation.

The appellant contends that the doctrine of assumed risk applies to the facts in this case and that the appellee, when he accepted employment as a switchman from the defendant railroad company, assumed the risk of being injured as the record discloses he was in this case. No doubt when the appellee accepted work under the appellant company he assumed all of the ordinary risks or dangers normally incident to the occupation in which he voluntarily engaged, so far as those were not attributable to the employer's negligence; but he did not assume the extraordinary hazard, or danger, of which he was not aware. In the case of *Gila Valley G. & N. Ry. Co. v. Hall*, 232 U. S. 94, the court says, ''An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of

work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." The appellants recognize this to be the law by offering instruction No. 10, which the court gave to the jury. They insist, however, that the appellee by using reasonable diligence could or should have seen the wire on the safety device, or grab-iron, and thus avoided injury to himself.

The evidence discloses that this train was approaching the appellee at the rate of six to eight miles per hour; that he was engaged in a dangerous occupation; that the operation which he was to perform must be done quickly in order to properly perform the work and avoid injury to himself; that he glanced at the grab-iron, not for the purpose of inspecting it to see whether a wire was fastened to it, or if it was safe for him to take hold of, but merely for the purpose of locating the safety device so as to enable him to properly perform his duty of lifting the coupling pin to disconnect the car from the rest of the train. In our opinion the appellee did all that a reasonable and prudent man under the same circumstances would have done, and the jury, by their verdict, properly found that this was an extraordinary hazard, and that the doctrine of assumed risk does not apply to the facts in this case.

Appellant insists that the appellee failed to prove that any negligence of the railway company caused the accident. It further insists that the appellee failed entirely to show that the defendant railroad company had any knowledge, or by the exercise of ordinary care could have had knowledge of the wire being placed upon the safety device upon the car in question. It is undisputed that the wire was on the safety device and was the approximate cause of the injury to the appellee. Inspector Nelson on direct examination testified that he inspected this car on the morning of the injury to the appellee. On cross-examination he admitted that he had no independent recollection of inspecting this particular car, but that it was his duty to inspect all cars; therefore, he inspected this car. He also testified that it was the custom when men were working on cars at night to hang a blue lantern on the grab-iron on the side of the car. Later on being recalled, he said the custom was to hang such lantern on the grab-iron on the end of the car.

It is also undisputed that this car was marked for ''clean out.'' The appellants insist that this clearly shows that the car was inspected by Nelson on the morning of the injury to appellee. It is generally known that in shipping stock, straw and manure accumulate in the car and a glance at the car through the door would disclose its condition and whether it needed to be cleaned out. This evidence has little, if any, weight in determining whether Nelson had inspected the grab-iron on this car on the morning of the injury to appellee. The evidence shows that from the time the car was unloaded until the injury to the appellee, the car was in possession of the railroad company. Mr. Sheridan, foreman of the train on which the appellee was working as a part of the train crew at the time of the accident to the appellee, was standing to the west a distance of about 20 feet. After the

appellee cut the car loose from the train it was his duty to signal the engineer to stop the train and let the car which had been cut off roll on to its destination. It is argued by the appellee that if Mr. Sheridan had given what is commonly termed "the wash out" signal, that is, the signal for a sudden stop, the engineer could have stopped the train in such a short distance that the car which injured the appellee would not have struck him.

There is a dispute as to how the plaintiff was dragged before he was struck by the car. It is also disputed whether the engineer did stop the train and the slack in it hit the plaintiff, or whether the train came on without being stopped and hit the plaintiff and then stopped. It is our opinion that all of these questions were properly submitted to the jury for their determination. They were properly instructed relative to the law of the case, and they have by their verdict found that the railroad company was guilty of negligence which caused the injury to appellee.

We are of the opinion that the jury were justified in finding a verdict as they did. We are unable to find any evidence which would lead us to believe they were actuated by passion or prejudice in arriving at their verdict.

The appellant claims that the verdict of the jury is excessive. The evidence shows that appellee is seriously injured and now in such condition that it is necessary for him to wear an iron brace to support his back; that he still requires medical attention; that his kidneys are affected; that he has suffered intense pain; that he has been wearing braces, or been in plaster casts practically all the time since the accident and the probabilities are that he will have to continue wearing a brace of some kind the rest of his life; that for the past nine years his average earning capacity was in excess of $1,800 per year. There is no way

that a jury can accurately estimate the damage in a case of this kind, but in several cases that have come before this court and the Appellate Court of the First District, judgments for equal or greater amounts have been sustained when the injuries seemed less severe than the one that the appellee has sustained. We are not prepared to say that the verdict is excessive. We find no reversible error in this case and the judgment of the circuit court of Peoria county is hereby affirmed.

*Affirmed.*