Harry M. Avance, Appellee, v. Guy A. Thompson, Appellant.

Opinion filed October 30, 1943.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, for appellant.

JOSEPH B. McGLYNN, of East St. Louis, and ROBT. J. McDONALD and WILLIAM H. DePARCQ, both of Minneapolis, Minnesota, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is a suit brought by Harry M. Avance, plaintiff appellee (hereinafter designated as plaintiff) against Guy A. Thompson, trustee, Missouri Pacific Railroad Company, a corporation, defendant appellant (hereinafter designated as defendant) to recover damages under the Federal Employers' Liability Act, for injuries sustained at Bismarck, Missouri, on January 17, 1942, while employed as a brakeman by defendant company. The accident resulted in his right leg being amputated about three inches above the knee and his left leg about four inches below the knee.

The complaint consisted of one amended count, and it alleged in substance, the employment of plaintiff by defendant as a freight brakeman in the switching of certain cars and participating in the furtherance of the movement of interstate commerce at Bismarck, Missouri, on January 17, 1942, and that defendant violated the Federal Employers' Liability Act in that defendant wrongfully and negligently pushed, kicked, hit and operated some cars on the same track on which were located the cars on which plaintiff was at work, causing these cars to collide with the cars on which plaintiff was so at work, with such force as to throw plaintiff to the ground and injuring him, and that no warning or notice was given of the approach and contact of these cars.

In his answer, defendant denied that at the time of the accident plaintiff was engaged in the furtherance of interstate commerce; denied the negligence charged;

denied plaintiff's injuries were the result of defendant's negligence; averred plaintiff's injuries were proximately caused by his own negligence, which in any event contributed thereto.

A trial by jury resulted in a verdict for $125,000. On motion for new trial plaintiff assented to a remittitur of $25,000, and judgment was entered against defendant for $100,000 and costs, from which judgment, defendant prosecutes an appeal to this court.

Plaintiff, at the time of the accident was 22 years old. On May 28, 1941, after about 12 student trips for instruction, he started work for defendant as a brakeman operating out of Poplar Bluff, Missouri. On the morning of the accident, the train crew's work was to switch the yard at Bismarck, make the Missouri and Illinois R. R. delivery and make up their train to be hauled to Poplar Bluff. This crew consisted of Maddox, conductor; Morse, head brakeman; Hayes, engineer; plaintiff, rear brakeman; Robertson, plaintiff's father-in-law, fireman and Brannon, who was sort of assistant conductor.

In the yards a track known as the lead track ran in a northerly-southerly direction. The coal chute track branched off the lead track. This coal chute track was used to supply the coal chute with coal, and standing on it at a point northwardly from its junction with the lead track were in order, two loaded coal cars and then three empty coal cars. It was purposed to remove the three empty coal cars so that they could be put over in the yards and then spot the loaded coal cars on the coal chute track. At the time the engine was headed south and was just south of the coal chute switch. It had hold of two box cars and a tank car which it had brought back from the Missouri and Illinois R. R. connection. It backed these cars into the coal chute track, coupled onto the two loaded coal cars and proceeded backwards until it had coupled onto the three empty coal cars. Then it returned southwardly off of

the coal chute track past the switch and drew the entire cut of cars onto the lead track. The immediate object of the foreman was to kick the three empty coal cars far enough up the lead to clear the switch leading to the coal chute, thus enabling him to spot two coal cars and return and pick up the three empties. Brannon, who in the absence of Conductor Maddox was in charge of the movement decided to do this by kicking them instead of shoving them under engine control.

It is claimed by plaintiff that Brannon instructed him to ride the cars and tie them down when they came to a stop, and claims he was given no information or instructions concerning the next stop. Brannon claims that he directed plaintiff to ride the three empty coal cars and watch out for them, to ride the cars until they came to a stop, and to watch them in case another engine came out, or if they fouled the roundhouse switch 443 feet north of the coal chute switch.

The cars were traveling at a speed variously estimated by plaintiff at two miles an hour; by brakeman Morse at three or four miles an hour; by engineer Hayes at six or seven miles an hour and by brakeman Brannon at seven to nine miles an hour, when plaintiff got to the southwesterly corner of the most northerly car, going immediately to the brake platform at that corner. Plaintiff took his station on the brake platform three feet below the top of the car, facing toward the north, in the direction in which he was traveling, with his back toward Brannon and the engine intending to set the brake when the car stopped. Brannon claims that he shouted to plaintiff, ''Lookout, I am going to bump them,'' and that plaintiff answered, ''O. K. let them bump.'' Morse also testified to this in substance. Brannon then signaled the engineer to back up. Plaintiff claims that he had not started to set the brake, when he heard someone say, ''Look out'' and there was a loud crash. This cry and the crash so he testified, came at the same time and the impact knocked

him to the ground. Plaintiff fell on the track, and the trucks of two of the coal cars ran over his legs, causing the injury complained of. Principal errors relied upon for reversal are, that the verdict is against the manifest weight of the evidence on the question of the commerce character of plaintiff's employment; that the court erred in striking defendant's special defense based on the Missouri Workmen's Compensation Act; that the court erred in ruling on evidence, particularly in the admission of a mortality table; that the verdict is excessive, and that the court erred in the giving of certain instructions to the jury.

The error assigned that the court erred in striking defendant's special defense based on the Missouri Workmen's Compensation Act is not argued. Where a party objects in his brief on appeal to rulings of the trial court but gives no reasons or arguments and cites no authorities to support his objection, this point will be considered waived. *Joseph Schlitz Brewing Co. v. Mahozki,* 108 Ill. App. 511.

It is urged that the trial court erred in admitting in evidence a mortality table, and cite in support thereof, *Chicago B. & Q. R. Co. v. Johnson,* 36 Ill. App. 564. It is true, that in that early case, it was held error to admit such a table, the reasoning of the court there being, that it was not competent to thereby show the probable duration of life of the injured party, and to indicate how long that party would suffer. In the later case of *Foley v. Everett,* 142 Ill. App. 250, the court said, ''The appellee is entitled to all the earnings that he has lost by reason of his loss of time since the injury and all that he will lose in the future. He is entitled to compensation for all his suffering, pain and inconvenience past and prospective, and compensation for all medical expenses necessarily incurred by him. In arriving at the amount he is entitled to recover, his age and expectancy of life should be considered in connection with both his earning capacity and suffering.''

We know of no better way of showing his expectancy of life, as the rule is laid down in the *Foley* case, than by giving the jury the benefit of a standard mortality table. As the court said in the case of *Vicksburg & M. R. Co. v. Putnam,* 118 U. S. 257, 258, "In order to assist the jury in making such an estimate, standard life and annuity tables, showing, at any age, the probable duration of life, and the present value of a life annuity, are competent evidence." Certainly this would be so in cases of permanent injury not causing death or total disability. *Louisville & N. R. Co. v. Burns* (6th Cir.), 242 Fed. 411. We are not inclined to hold that the trial court erred in the admission of this exhibit.

Defendant further claims that plaintiff was not in any way concerned with interstate commerce. The statute, broadened by the 1939 amendment, now reads, "Any employee of a carrier, any part of whose duties as such employee shall be in furtherance of interstate or foreign commerce; or shall in any way directly or closely and substantially, affect such commerce as above set forth shall for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." In construing such amendment in the late case of *Edwards v. Baltimore & O. R. Co.* (7th Cir.), 131 F. (2d) 366, which involved a machinist's helper repairing an engine, the court said, "Despite any question as to whether plaintiff might have recovered under the original Act, it is clear that he is within the scope of the amendment. Under the original statute experience demonstrated continued difficulty in ascertaining when the work of any employee was part of interstate commerce. The amendment, much wider in scope, was inspired by a desire to avoid such confusion. Congress' intent to include an employee who performs services which in any way furthers interstate commerce is clear."

This amendment has been construed in *Louisville & N. R. Co. v. Potts,* 178 Tenn. 425, 158 S. W. (2d) 729; *Southern Pac. Co. v. Industrial Accident Comm.* (Cal. App.), 113 P. (2d) 768; *Piggue v. Baldwin,* 154 Kans. 708, 121 P. (2d) 183; *Ermin v. Pennsylvania R. Co.,* 36 F. Supp. 936.

Without going into detail with reference to all of the nine cars involved in the switching operation, in the course of which plaintiff was injured, it appears that cars, Missouri Pacific 3205, PRR. 50409 and PTX. 4741 were cars included in this nine, that were brought in from Illinois on train 93 by Conductor Rehm. There appears no dispute but what car PTX. 4741 was being hauled and switched on its journey from Illinois to Arkansas at the moment of impact. According to Conductor Maddox car PTX. 4741 was destined to go to Texarkana, Arkansas, as part of train 57, taken out of Bismarck, Missouri.

It is contended by defendant that at the time of the accident the activity in which plaintiff was engaged was the switching of three empty coal cars out of the coal chute track to the railroad yards and the replacing and spotting in the coal chute track of two loaded coal cars and that when a train crew is engaged in such switching operations, the commerce character of the employment is determined by the character of the switching movement at the time being made. Counsel for defendant further contend that though car PTX. 4741 later in the day left in train 57, destined to Texarkana, Arkansas, yet there is no evidence that at the time of the accident it had been billed or assigned for such a destination or on this particular train. We do not believe that the fact that this car was not taken directly from the Missouri-Illinois Railroad Company, over to track number 7 and placed in train number 57 from Texarkana is material. A local and temporary switching movement does not interrupt interstate commerce. *Pipal v. Grand Trunk Western Ry. Co.,* 341

Ill. 320; *Herb v. Pitcairn,* 306 Ill. App. 583; *Davis v. Dowling* (6 Cir.), 284 Fed. 670; *Gehan v. New York Cent. R. Co.,* 205 App. Div. 554, 199 N. Y. S. 847; *Sullivan v. Wabash Ry. Co.* (6 Cir.), 23 F. (2d) 323.

In *Pipal v. Grand Trunk Western Ry. Co., supra,* it was held that the detention of an interstate car on a hold track at its point of destination before removal for unloading was but a temporary interruption of the interstate shipment and did not terminate its character. There, the railroad company claimed that when the cars had reached Blue Island, they had arrived at their destination. It was further argued that when they were moved later to 13th street for unloading nothing was involved but a local interstate switching movement. The court rejected this theory. In the case of *Herb v. Pitcairn, supra,* the Appellate Court said, "This court is unable to perceive a sound reason, or any precedent which determines that a 'continuity' of movement is requisite to characterize a movement as being 'interstate'. Instances may readily be cited of many and varied switching movements which may be required in facilitating the journey in interstate commerce of a car or train, and the fact of continuity of movement has apparently never been determined as an essential requisite to the determination of interstate character of commerce (*Minneapolis, St. P. & S. Ste. M. R. Co. v. Goneau,* 269 U. S. 406, 70 L. Ed. 335, 46 Sup. Ct. 129)."

It is sufficient to bring the activity, within the Federal Act, that one or more of the cars being moved has been destined for interstate transportation irrespective of whether a specific train is being prepared at the time. *Mitchell v. Louisville & N. R. Co.,* 375 Ill. 545. In the instant case there was no interruption whatever of the movement of car PTX. 4741 because the engine continuously was attached to it and hauling it and moving it from the time of its pick-up from the Missouri-Illinois Railroad Company until the time of

its placement in train number 57, destined for Texarkana, Arkansas.

The case of *Benson v. Chicago, R. I. & P. Ry. Co.*, 267 Ill. App. 11, aff'd 352 Ill. 195, is closely analogous to the case at bar. The engine in that case had a hold of seven or eight cars. A movement was being made to shunt a car on a yard track. These cars were being pushed by an engine and Benson in the uncoupling of the car farthest away from the engine in order to separate it and kick it along on the yard track, stumbled, was dragged along, and severely injured. It was not shown that the particular car being switched was engaged in interstate commerce, but there the court said, "The evidence shows that the cut of cars upon which the appellee was working contained cars which had been shipped from other states. One car was being shipped from Peoria to New Jersey. That the appellee was so engaged in interstate commerce at the time of his injury is sustained by the cases of *Wangerow v. Industrial Board*, 286 Ill. 441; *Davis v. Dowling*, 284 F. 670, *Jencary v. Chicago & Interurban Traction Co.*, 306 Ill. 392; *Erie R. Co. v. Winfield*, 244 U. S. 170 and *New York C. & H. R. R. Co. v. Carr*, 238 U. S. 260. It is our opinion that at the time of the accident the appellee was engaged in interstate commerce transportation."

As to the contention of defendant, that the verdict of the jury was manifestly against the weight of the evidence in that the evidence proved that the plaintiff was not engaged in interstate commerce at the time of the injury, we hold that there was substantial evidence, as we have indicated in this opinion that plaintiff was engaged in interstate commerce, or work so closely related thereto as to be practically a part thereof, at the time he was injured, and we cannot therefore say that the verdict of the jury is contrary to the manifest weight of the evidence.

It is urged on the part of defendant, that the court erred in the giving of plaintiff's instruction No. 12, which told the jury that "it should take into consideration the amount of earnings it is reasonably certain from the preponderance or greater weight of the evidence in this case, if any, he (plaintiff) will lose in the future in consequence of said injuries." It is argued that the jury if they found for the defendant, was required by this instruction, when considered with the mortality table, to multiply $2,376 (the projected yearly wage) by 40.17 years (the life expectancy of plaintiff according to such table). We do not understand that juries are required to arrive at the amount of damages in personal injury cases with any such mathematical precision, and we find no error in this instruction.

Complaint is made that the court erred in the giving of plaintiff's instruction No. 2, which reads as follows:

"The jury are instructed that it appears in evidence that the plaintiff and the defendant were engaged in interstate commerce, and transportation at the time of the accident, and therefore, the rights and duties and liabilities of the parties to this action are not governed, affected or controlled by the laws of the State of Missouri, where the accident happened, nor by the laws of the State of Illinois, where this action is being tried, but the rights, duties and liabilities of the parties are governed and controlled exclusively by the Federal Employers' Liability Act of the United States."

It is contended that defendant was entitled to have the jury pass on the commerce character of work being done at the time of plaintiff's injury. If the question as to whether or not plaintiff was engaged in interstate commerce at the time of his injury was a controverted question, this would be for the determination of the jury. However, as we have previously held in

this opinion, there seems to be no substantial controversy about this, and we are not inclined to hold that the giving of this instruction was error.

The giving of plaintiff's instruction No. 6 is urged as reversible error. This instruction reads as follows:

"The Act of Congress further provides that the fact that the injured employee may have been guilty of contributory negligence, if any, does not bar a recovery, but under such circumstances the damages shall be diminished in proportion to the negligence attributable to such employee. You are therefore instructed that if from the preponderance or greater weight of the evidence in this case you find that defendant was guilty of one or more of the charges of negligence alleged in plaintiff's complaint, and further find from the preponderance or greater weight of the evidence in this case that plaintiff was guilty of negligently contributing to his injury, then plaintiff's contributory negligence, if any, does not bar him from recovering in this action, but will affect any damages he is entitled to recover, lessening such damages, if any, to the extent that his negligence, if any, contributed to this accident."

It is urged the vice of this instruction is that it ignores defendant's defense to plaintiff's cause of action, i. e. that plaintiff's conduct or negligence was the proximate cause of his injuries. The instruction does not direct a verdict—it merely advises the jury that if both parties are negligent, then the fact of plaintiff's contributory negligence does not bar recovery. Defendant's instruction No. 2 told the jury that if they believed that the injury suffered by plaintiff was due entirely to his own negligence, if any, and was not proximately caused in whole or in part by the negligence, if any, of the defendant, then they must find the defendant not guilty. Contributory negligence, in this class of cases does not bar recovery, but lessens

damages, 45 USCA 53; *Gildner v. Baltimore & Ohio R. Co.,* 90 F. (2d) 635; *Miller v. Central R. Co. of New Jersey,* 58 F. (2d) 635. Plaintiff's instruction No. 6 simply advises the jury as to an element that they may consider in assessing damages, not something that would be a complete defense to the action. This is supplemented by defendant's instruction No. 2 which advises them when that element would be a complete defense. Any error in the giving of an instruction for plaintiff, not peremptory in its character is cured by the giving of an instruction for defendant which states the elements that can be taken into consideration. *Howard v. City of Rockford,* 270 Ill. App. 155. The instructions are to be taken as a series and the charge construed as a whole. *Bolle v. Chicago & N. W. R. Co.,* 258 Ill. App. 545. We believe then on the whole, the jury were instructed fairly and correctly as to the law.

It is strenuously argued on behalf of defendant that the damages are excessive. On behalf of plaintiff it is urged that the question of damages is not open for consideration or review in the Appellate Court for the reason that it must be determined according to the general principles of law as administered in the federal courts. In the federal courts the question of whether a verdict is excessive is not for a court of appeals. *Chesapeake & O. R. Co. v. Kelly,* 241 U. S. 485. In the case of *Stott v. Thompson,* 294 Ill. App. 450, this court held that the question of the amount of damages awarded by the jury, in cases arising under the Federal Employers' Liability Act, is not for the consideration of the State courts, upon appeal. Upon a further consideration of this question, it seems the better practice to consider the question of the excessiveness of the damages in this court. In cases arising under the Federal Employers' Liability Act all procedural matters, including the admissibility of evidence, are governed by the law of the forum, *Central Vermont Ry. v. White,* 238 U. S. 507; *Brinkmeier v.*

*Missouri P. Ry. Co.,* 224 U. S. 268; *Chesapeake & O. R. Co. v. De Atley,* 241 U. S. 310; *Chesapeake & O. R. v. Kelly,* 241 U. S. 485; *Minneapolis & St. L. R. Co. v. Bombolis,* 241 U. S. 211. We will therefore consider the claim of defendant that the damages awarded by the jury, and the judgment of the trial court was excessive.

There can be no question about the seriousness of plaintiff's injuries. Both of his legs were cut off, at the time of the accident, the right leg two inches below the knee, the left, eight inches below the knee. He lay on the ground between 25 and 30 minutes. The company doctor gave him shots, and he was taken to the hospital in St. Louis, the doctor giving him further shots en route to relieve pain. He was in the hospital 13 weeks and 4 days, and in that time both legs were operated upon and further amputations made, the right leg three inches above the knee and the left leg four inches below the knee. He lost between 60 and 70 pounds while in the hospital, had three blood transfusions, and suffered quite a bit of pain during the first 10 weeks. He gets about in a wheel chair, but needs assistance in getting in and out of it. He is 22 years of age and previous to the accident was in good health.

As a court of appeals, in passing upon the question of alleged excessive damages, we can neither speculate or conjecture as to how plaintiff's financial status might be affected in the future by business booms or depressions; by the uncertainties of the labor situation after the war, or how his earnings might be affected by his expenses away from home, taxes, work clothing, union dues, social security and old age pension. We assume that the jury took these matters into consideration in arriving at their verdict and that the trial court did the same in entering the remittitur. Nor can we in a personal injury case, reduce the amount of the verdict to a matter of mathematical computation. *De Fillippi v. Spring Valley Coal Co.,* 202 Ill. App. 61.

Nor can we compute the earning capacity of the amount awarded plaintiff at any given rate of interest. Apparently counsel for defendant expects this court to do all this. We do not find it within our province to do so.

Counsel for defendant, in support of their contention that the amount of the verdict is excessive, cite many cases, both in Illinois and other jurisdictions, in the most of which the injuries were not as serious and the cases decided some years ago. The damages awarded by the jury may be larger than would have been sustained years ago, and on the question of the amount, the earlier decisions of this State are of litle assistance. We cannot, howver, be unmindful of the fact that the money value of life and health is appreciating and the purchasing power of money depreciating during recent years. *Posch v. Chicago Rys. Co.,* 221 Ill. App. 241.

In *Bolle v. Chicago & N. W. R. Co.,* 258 Ill. App. 545, cited by plaintiff, the plaintiff was 22 years of age and was earning $130 a month, as against $198 a month earned by plaintiff in the instant case. The court there sustained a verdict of $37,500, as not excessive, for the loss of one leg above the knee. This was in 1930.

In *Toledo, C. & O. R. Co. v. Miller,* 108 Ohio St. 388, 140 N. E. 617, decided in 1923, plaintiff was a carnival worker who lost both legs in a crossing accident. Of necessity his earning capacity must have been considerably less than that of plaintiff in the case at bar. In that case in sustaining the verdict of $75,000 as not excessive, the court said, ''While the verdict is a large one, the effect upon this man's life, his past and present suffering, the uncertainties the future has for him, his ability to get about in modern conditions of travel and traffic in city streets and thoroughfares, might be elements such that the jury, upon full consideration, would feel justified in returning the amount they did.''

It is difficult to appraise scientifically human pain and suffering and a mutilated body. In this character of case the damages are for the determination of the jury, and unless we are able to say that the verdict is so excessive as to indicate that the jury was moved by prejudice or passion, we would not be warranted in reversing the judgment on the ground that the verdict is excessive. *Bolle v. Chicago & N. W. R. Co., supra; Posch v. Chicago Rys. Co., supra; Kavale v. Morton Salt Co.,* 242 Ill. App. 205; *Maskaliunas v. Chicago & W. I. R. Co.,* 235 Ill. App. 198.

Without deciding whether the amount is larger than we would have awarded had the responsibility been ours in its inception, we think that it is not so excessive as to require interference on our part. Finding no reversible error, the judgment of the circuit court of St. Clair county will be affirmed.

*Affirmed.*